[No. 20439.   In Bank. — September 28, 1888.]

## EX PARTE McNULTY, ON HABEAS CORPUS.

CONSTITUTIONAL LAW — PHYSICIANS AND SURGEONS. — The act of April 3, 1876, entitled "An act supplemental to and amendatory of an act to regulate the practice of medicine in the state of California," which requires that every person practicing medicine and surgery shall have certain qualifications, and procure a certificate from a board of examiners, appointed by a medical society, which may be revoked for unprofessional conduct, is not unconstitutional as a whole. Whether certain independent provisions are unconstitutional, *quære.*

ID. — POLICE POWER. — It is not within the police power of the legislature to enact a law punishing a physician, who has been decided to be competent to practice, for what is styled "unprofessional conduct," in advertising himself as a specialist in certain diseases. Per THORNTON, J.

ID. — DELEGATION OF POWER — CRIMINAL OFFENSE. — The legislature cannot delegate to a board of medical examiners the power of declaring what acts shall constitute a misdemeanor, but if it could enable them to establish a crime, by rules and regulations declaring what shall constitute unprofessional conduct of a physician, no one can be convicted of such a crime in the absence of such rules and regulations. Per PATERSON, J.

CRIMINAL LAW — SUFFICIENCY OF COMPLAINT — HABEAS CORPUS. — In general, the sufficiency of a complaint or indictment, or of the evidence to support it, cannot be inquired into on *habeas corpus;* but when the facts charged and proved do not constitute a public offense, the defendant will be discharged on *habeas corpus.*

ID. — PRACTICING MEDICINE AFTER REVOCATION OF CERTIFICATE. — The act of April 3, 1876, regulating the practice of medicine, only makes it an offense to practice without first having procured a certificate, and no penalty is attached to practicing after the certificate is revoked.

ID. — CONSTRUCTIVE CRIMES. — The question whether certain conduct is a crime must be determined from the language of the statute. Constructive crimes — crimes built up by courts, with the aid of inference, implication, and strained interpretation — are repugnant to the spirit and letter of English and American criminal law.

APPLICATION for a writ of *habeas corpus.* The petitioner was held under conviction of a misdemeanor in the superior court of the city and county of San Francisco. The further facts are stated in the opinion of the court.

*McAllister & Bergin,* for Petitioner.

*Taylor & Haight,* and *George E. Harpham,* for Respondent.

MCFARLAND, J. — The petitioner, P. Roscoe McNulty, is imprisoned by force of a judgment of the lower court upon conviction of what is asserted to be a crime under the act of the legislature entitled " An act supplemental to and amendatory of an act to regulate the practice of medicine in the state of California" (approved April 3, 1876), which became a law April 1, 1878. (Stats. 1877–78, p. 918.) This act requires, generally, that every person practicing medicine or surgery shall possess certain qualifications, and shall have issued to him a certificate from one of three boards of examiners, each board to be appointed by one of three certain medical societies named in said act. It is provided, also, that a certificate may be revoked by the board granting it, when its holder has been guilty of "unprofessional conduct."

The first contention of counsel for petitioner, that the statute above mentioned is *in toto* unconstitutional, and therefore entirely void, has been determined the other way by this court in *Ex parte Frazer,* 54 Cal. 94. In that

case it was held that the general frame-work of this stat-
ute was not in violation of the constitution, although no
opinion was expressed as to the validity of certain inde-
pendent provisions which it contains. The contention
that the police court of San Francisco, in which the
prosecution was commenced, had no jurisdiction of the
offense sought to be charged against petitioner, because
it is punishable by imprisonment for 365 days, need not,
under the view which we take of another point in the
case, be here determined. And the same may be said of
the position taken by petitioner, that, under the author-
ity of *Ex parte Cox*, 63 Cal. 21, the legislature could not
delegate to the board of examiners the power to declare
by rules and regulations what should constitute "unpro-
fessional conduct," and thus, by its own act, establish a
crime; and, further, that if such power could be delegated,
then, as in this case no rules declaring what should con-
stitute unprofessional conduct had been adopted, peti-
tioner is in the position of one who has been convicted
under a void *ex post facto* law. There are also some other
points made by counsel, which we do not think necessary
to be here discussed. The complaint upon which peti-
tioner was tried was insufficient, and, in our opinion,
the demurrer to it should have been sustained. It is
true that, generally, the sufficiency of a complaint or an
indictment cannot be inquired into on *habeas corpus.*
Where the complaint, though inartificially drawn, shows
an evident attempt to state the essential facts which con-
stitute the crime sought to be charged, the defect in the
statement would not warrant the discharge of the defend-
ant. It is true, also, that upon *habeas corpus* the court
will not, ordinarily, look into the sufficiency of the evi-
dence to prove the facts which constitute the offense.
But when the facts charged, or attempted to be charged,
in the complaint or indictment, and proved by the
evidence, do not constitute any public offense, then the
defendant will, upon *habeas corpus*, be discharged. (*Ex*

*parte Kearny*, 55 Cal. 215.)  Now, in this case it clearly appears that in the police court, and in the superior court to which an appeal was taken, the case was tried, and the petitioner convicted upon the theory that the complaint stated, or attempted to state, and the evidence showed, the following facts, and none other, viz.: The petitioner, having regularly received a diploma from a recognized medical college of Pennsylvania, made application on January 8, 1884, to one of the boards of examiners constituted under said statute above mentioned for a certificate; and on said day said board issued to him a certificate in due form, as provided for in said statute, and he commenced the practice of his profession.  Afterwards, on August 25, 1885, the said board made an order revoking said certificate for "unprofessional conduct" on the part of petitioner, consisting in this: that he had, in the San Francisco Chronicle newspaper, and in a printed pamphlet, advertised himself as a specialist in certain enumerated diseases.  After the action by the board, the petitioner continued to practice medicine, and for thus continuing to practice he was charged, tried, convicted, and punished.  But in our opinion this conduct on the part of petitioner did not constitute a criminal offense, or subject him to any punishment under the statute in question.  Section 1 of the said act of 1878, after providing for the certificate, declares that "such certificate shall be conclusive as to the right of the person named therein to practice medicine and surgery in any part of the state." And the only penal clause, or clause creating a criminal offense, in the act is contained in section 7, and is as follows:  "Any person practicing medicine or surgery in this state, without first having procured a certificate so to do from one of the boards of examiners appointed by one of the societies mentioned in section 2 of this act, shall be guilty of a misdemeanor, and shall be subject to the penalties provided in section 13 of the act, to which this act is amendatory and supplemental."  Nothing is

declared in this act to be a crime except practicing "without first having procured a certificate." Practicing after an order of the board revoking the certificate for unprofessional conduct is not declared to be a crime, and no penalty is attached to it. Respondent's position really is, that the legislature must have intended such conduct to be a criminal offense. It would be vain to inquire what intent lurked in the minds of the persons who happened to be members of the legislature when the act was passed. It certainly would be a forced thing to imagine their intent to be that a man should lose his liberty for the violation of any vague, undefined notion of unprofessional conduct, which might, after the fact, be entertained by certain individuals constituting a board of examiners. At all events, the question whether or not the conduct in question is made a crime must be determined from the language used in the statute, and we find there nothing that declares such conduct to be a criminal offense. Nor is there anything in what is left of the act of 1876 (although no reference is made to that act in the complaint) which makes the conduct ascribed to petitioner a crime. Constructive crimes — crimes built up by courts with the aid of inference, implication, and strained interpretation — are repugnant to the spirit and letter of English and American criminal law. Let the petitioner be discharged.

SHARPSTEIN, J., concurred.

SEARLS, C. J., dissented.

THORNTON, J., concurring. — I concur in the conclusion reached by Justice McFarland, and am inclined to concur in the reasons given by him for such conclusion. But I cannot hold that the legislature has the constitutional power to enact a law punishing a physician who has been decided to be competent to practice, as was the case with the petitioner here, when a certificate was issued to him, for

what is styled "unprofessional conduct," and as advertising himself in a newspaper and in a printed pamphlet as a specialist in certain enumerated diseases. This goes beyond the police power, under which power the statute to be considered was enacted. That a rule of professional conduct by a board of medical men prohibiting such advertisements, and declaring them unprofessional, can be declared a misdemeanor and punished, would extend the police power beyond whatever has been allowed. As well might the board declare that wearing any other hat than one of a white color, by a physician, should be unprofessional conduct, and cause it to be punished as a misdemeanor. The advertisement of the character mentioned does no harm to any one. It may be of benefit to the public, by giving to the subjects of the diseases mentioned information of the existence and residence of a person who has peculiar skill in curing them. Such laws are passed to prevent injury to the community, not to prevent or exclude a benefit to it. We are told that at one time the able and celebrated Hahnemann, a competent and properly licensed physician, was prosecuted and persecuted in a German state for compounding his own medicines, under a law enacted in the interest of apothecaries. I cannot conclude that such a statute here could be regarded as a valid exercise of power under our constitution. Professional etiquette prescribed by a class of men so eminent in standing as the medical practitioners of our state is a matter to be regarded and respected, but it has its limits, and I cannot conceive that a violation of it by a competent physician can ever be by the state made a penal offense. The rules in regard to such etiquette between the members of the medical as between those of the legal profession must find their enforcement from a source other than the state. It is highly proper and just that it should be so. As the state cannot make the conduct of petitioner penal directly, it cannot be so indirectly. To hold, as contended here by

counsel, adverse to the claims of petitioner would be to affirm the validity of a statute in which an attempt is seemingly made to accomplish that indirectly which cannot be directly done. For the reasons given above, the petitioner, in my judgment, should be discharged from custody.

PATERSON, J., concurring.—There is no doubt that the exercise of the right to practice medicine, or to pursue any other lawful employment, may be regulated by law; but the right is one of the privileges and immunities in which the citizen is entitled to be secured and protected under the constitution and laws of the state. In *Ex parte Cox*, 63 Cal. 21, it appeared that the petitioner had been convicted of a misdemeanor, consisting of a violation of one of the rules and regulations of the board of state viticultural commissioners. This court there said: "The legislature had no authority to confer on the officer or board the power of declaring what acts shall constitute a misdemeanor. The legislative power of the state is vested in the senate and assembly. That power could not, as to the case before us, be delegated to the officer or board.". In this case, even if it be conceded that the legislature could delegate to the board of examiners the power to declare by rules and regulations what should constitute unprofessional conduct, and thus by its own act establish a crime, it is sufficient to say that no such rules or regulations have ever been prescribed. Before one can be convicted of a crime, there must be some rule of action prescribing with some certainty and expressing intelligibly the sovereign will. Whatever may be said of the right of the board of examiners to revoke the license of the petitioner to practice medicine, and thus cast upon him the odium which must always follow such an expulsion from the ranks of reputable practitioners, the liberty of the petitioner cannot be made to depend upon a thing so vague and uncertain as the undefined views of the

members of the board as to what constitutes unprofessional conduct. In every case, to constitute crime there must be a union of act and intent. How can it be said there is an intent to commit a crime, where the law, which it is claimed has been violated, exists only in the minds of individuals? The authorities upon which the respondent relies, namely, *State* v. *Board*, 32 Minn. 324, *In re Smith*, 10 Wend. 449, are not in point so far as the question of crime is concerned. The first case cited was a *mandamus* to compel the state medical examining board to issue to the applicant a certificate. The other was *certiorari* to annul an order expelling Smith from a medical society, and declaring him incapable of practicing medicine.