## HARRISON SUPPLY CO. v. UNITED STATES.

(Circuit Court of Appeals, First Circuit. April 28, 1909.)

No. 801 (1,756).

1. CUSTOMS DUTIES (§ 26*)—CLASSIFICATION—IRON SAND—EJUSDEM GENERIS—"MANUFACTURES OF IRON."

In construing the provision in Tariff Act July 24, 1897, c. 11, § 1, Schedule C, par. 124, 30 Stat. 159 (U. S. Comp. St. 1901, p. 1636), for "all iron in * * * forms less finished than iron in bars, and more advanced than pig iron," *held*, that the test is the degree of advancement in manufacture, rather than in refinement or quality, and that iron sand, a finished manufactured article, is not within said provision, but is dutiable as "manufactures of iron," under paragraph 193, 30 Stat. 167 (U. S. Comp. St. 1901, p. 1645).

[Ed. Note.—For other cases, see Customs Duties, Dec. Dig. § 26.*

For other definitions, see Words and Phrases, vol. 5, p. 4361.]

2. WORDS AND PHRASES—"ARTICLE."

The term "article" is commonly accepted, in trade and elsewhere, as something different from bulky and heavy commodities.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 1, pp. 511–515.]

Appeal from the Circuit Court of the United States for the District of Massachusetts.

The provisions of Tariff Act July 24, 1897, c. 11, § 1, Schedule C, pars. 124, 193, 30 Stat. 159, 167 (U. S. Comp. St. 1901, pp. 1636, 1645), referred to in the opinion herein, read as follows:

"124. * * * Provided, that all iron in slabs, blooms, loops, or other forms less finished than iron in bars, and more advanced than pig iron, except castings, shall be subject to a duty of five-tenths of one cent per pound.

"193. Articles or wares not specially provided for in this act, composed wholly or in part of iron, * * * and whether partly or wholly manufactured, forty-five per centum ad valorem.

Searle & Pillsbury (W. Wickham Smith and Walter F. Welch, of counsel, and Charles P. Searle, on the brief), for importers.

William H. Garland, Asst. U. S. Atty., and Asa P. French, U. S. Atty.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judges.

ALDRICH, District Judge. We think the decree of the Circuit Court in this case should be affirmed.

The collector assessed a duty upon the importation in question under paragraph 193 of the tariff act of 1897 (Act July 24, 1897, c. 11, § 1, Schedule C, 30 Stat. 167 [U. S. Comp. St. 1901, p. 1645]). This

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

classification was sustained by the Board of General Appraisers, and upon appeal to the Circuit Court the decision of the Board of Appraisers was affirmed. The opinion of the Circuit Court is reported in 164 Fed. 155, and fully describes the character of the importation, and sufficiently sets out the material part of the various paragraphs of the tariff act which require consideration in connection with the questions raised before us by the importer.

It is quite unnecessary, therefore, to dwell much upon the history of the case. The article in question was known as "iron sand." It is perfectly clear, and, indeed, it is admitted by the importer, that this product was wholly manufactured, finished, and ready for the ultimate use for which it was intended. It was manufactured or put in shape for use through melting iron and steel scraps, and through subjecting a thin stream of the molten metal to a blast of steam which scatters it into small particles varying in size, which, dropping into water, are chilled and shaped. They are then sifted, whereby the various sizes are segregated, and, being ready for use, are placed in burlap bags for shipment to the markets and to the trade. Although some parts of the scraps are steel, and although the point in the earlier stages of this proceeding was taken that the articles in question were not composed wholly of iron, that point is not urged, and it is understood that it is abandoned. Therefore, we have to deal only with a finished manufactured article composed wholly of iron.

In view of the sense in which the term "article" is commonly accepted, in trade and elsewhere, as something different from bulky and heavy commodities, if we were only to look at paragraph 193, it would seem quite clear that the manufactured article in question was covered by that paragraph; but the contention of the importer is that this particular article is not specially provided for in that paragraph, or anywhere in the tariff act, and that it properly belongs to the proviso to paragraph 124, because it is iron less finished than iron in bars, which are specified in paragraph 124. The argument in support of this contention is chiefly based upon the idea that it is less advanced in quality than iron in bars, and that the test is the degree of advancement in refinement or quality, rather than the degree of advancement in manufacture.

The consideration of a question of this kind, of course, necessarily involves statutory construction and the intention of the lawmaking power. It is difficult for us, and we think it would be unreasonably straining a point, to hold that Congress intended to place the infinitesimal particles of iron in question, in a perfect state of manufacture so far as intended use is concerned, and which, as said by the Circuit Court, belong to a manufacture aside from the ordinary line of development of iron, into comparison with the bulky iron slabs, the iron in bars, the pig iron, and the other kinds of bulky iron products in various stages of development which are specified in paragraph 124. Upon the particular question whether Congress intended to place a manufactured article of the character in question into a class with the forms of iron dutiable under the proviso of paragraph 124, it is quite significant that iron sand, according to the undisputed testimony, was not a product known to the iron and steel trade.

The argument of the importer is that his contention as to quality as the test is supported by the phrase, "other forms less finished than iron in bars," used in paragraph 124, and that, as the article in question is less advanced in the direction of refinement than iron in bars, it is within the proviso of paragraph 124; in other words, that it is in a more crude state in respect to quality than iron in bars. Under this particular contention as to quality, considerable reliance is placed upon Roessler & Hasslacher Chemical Company v. United States (C. C.) 94 Fed. 822. It seems to us, however, that quality became the test in that case, because the words "article in a crude state" were used in the statute, and because the importation in question was "crude" in the tariff sense of that particular statute.

The argument of the importer apparently gets some support through analogy from the case of United States v. Binney, 82 Fed. 992, 27 C. C. A. 347. The decision in that case, upon a question treated as a doubtful one, was by Judge Townsend in the Circuit Court, and was affirmed by the Court of Appeals upon the opinion below. The case upon casual examination would seem to be quite close to the one we are considering. We think, however, on the whole, that it may be fairly distinguished from this case, because it would seem that the paragraphs in the two cases are somewhat different and that Judge Townsend's decision to some extent turned upon the exceptionally broad terms of paragraph 122, which was there in question, and which covered "steel ingots and steel in all forms and shapes," and because the article of importation in that case, although changed in form, remained steel.

The decree of the Circuit Court is affirmed, without costs.