SCHAUER, J.
 

 We are again confronted with legal problems arising out of Los Angeles city ordinance number 80,-170, known as the Los Angeles Picketing Ordinance. That ordinance has been considered by us and portions of it construed in the cases of
 
 People
 
 v.
 
 Tilkin,
 
 (1939) 34 Cal. App. (2d) (Supp.) 743 [90 Pac. (2d) 148], and
 
 People
 
 v.
 
 Gidaly,
 
 (1939) 35 Cal. App. (2d) (Supp.) 758 [93 Pac. (2d) 660]. The questions here, while finding genesis in different facts and to some extent in different provisions of the ordinance, are controlled fundamentally by the propositions of law enunciated in the prior decision.
 

 
 *Supp. 756
 
 The complaint in this case is in four counts. All counts charge generally that the defendants violated section 11 of the ordinance mentioned and each avers specific facts constituting, severally, the respective alleged different offenses. Section 11 contains no proscriptive language and merely declares the penalty for violating other provisions of the ordinance which are proscriptive, but inasmuch as each count contains a specific averment of facts sufficient in themselves to state and identify an offense, if the pertinent ordinance provisions are valid, we shall disregard the references to section 11 as being mere surplusage and look to the particular subdivisions of the ordinance which, consistently with the acts alleged, should have been pleaded as violated and which do purport to prohibit such acts. The section references recurring throughout this opinion are to sections of the above identified Los Angeles city ordinance number 80,170.
 

 COUNT I.
 

 The pleading and proof establish that six defendants picketed (peacefully walked to and fro on a public street in the vicinity of) a place of business having but three entrances.
 

 It is argued for the state that sections 3 and 4 (b) prohibit more than one picket per entrance (with a minimum of two for any one establishment).
 

 COUNT 11.
 

 The pleading and proof establish that the six defendants engaged in picketing as described under count I and that, in so doing, each of them walked within a distance of less than 25 feet from others participating therein.
 

 Sections 3 and 4 (e) prohibit certain pickets coming closer together than 25 feet.
 

 COUNT 111.
 

 This count does not allege picketing as that term is defined in section 1 (a) of the ordinance but the proof, by stipulated facts, establishes that two defendants, Popoff and Garcia, did participate in the picketing described herein under count I, and that while so engaged each of them carried a placard, of lawful size, but bearing printed words other than those allowed by section 6 of the ordinance, Garcia’s placard reading “Berg Metal Works Unfair to Organized Labor, ILWU, Local 1-26” and Popoff’s reading “We Want Decent Wages, ILWU, Local 126-26.”
 

 
 *Supp. 757
 
 Sections 5 and 6 prohibit a picket from displaying a placard containing any words, lettering or design other than “ (i) the name or initials of the organization represented by the person . . . carrying such . . . banner, and (ii) the word ‘picketand “ (iii) the statement that a strike is in progress at the place of business so being picketed, including the name or address of such place of business”. The matters specified in clauses (i) and (ii) just quoted from section 6 are required to be stated on any sign displayed while clause (iii) is merely permissive.
 

 COUNT IV.
 

 The pleading and proof establish that defendants Seeliger and Pfeiffer, while participating in the picketing described under count I herein, spoke orally, in a conversational tone, to all persons who approached them and whom they believed to be employees or prospective employees, saying: “This place is on strike. Don’t work here.”
 

 Sections 3 and 4 (c) purport to prohibit any activity by a picket other than “patrolling upon the public places in front of or about such place of business [the place being picketed] and . . . wearing or carrying such an arm band or other banner as is permitted by Section 6 of this Ordinance.” Section 7 provides that “No person shall . . . cry out or proclaim, . . . within the hearing of any person ... in the vicinity of, or about any place of business ... in any such manner or with any such intent as described in clauses lettered (i) and (ii) of Section 5 hereof.” The clause (ii) of section 5 includes the language “in a manner calculated or with the intent to induce or influence any person to refrain from entering, occupying or leaving any place of business, or to refrain from performing services or labor, or to refrain from seeking or obtaining employment.”
 

 We have heretofore held, in effect, in
 
 People
 
 v.
 
 Tilkin,
 
 (1939);
 
 supra,
 
 34 Cal. App. (2d) (Supp.) 743 [90 Pac. (2d) 148, and reiterated in
 
 People
 
 v.
 
 Gidaly,
 
 (1939),
 
 supra,
 
 35 Cal. App. (2d) (Supp.) 758 [93 Pac. (2d) 660], that in so far as any offense connected with picketing a place of business is concerned, section 4 is a substantial part of the definition of any act intended to be interdicted by section 3. We said, in the opinion in the case first mentioned, “We are of the opinion that in any case where section 4 is involved, it
 
 *Supp. 758
 
 and section 3 must be read together”. Likewise, in the same case, we held, “sections 5 and 6 must be read together, to determine the offenses which have been created,” and in
 
 People
 
 v.
 
 Gidaly, supra,
 
 we declared, with reference to the prohibitions there involved, that sections 3 and 4 were to be “construed together . . . the various provisions of section 4 being regarded as parts of the definitions of these offenses, and not mere exceptions to section 3.” To phrase the proposition differently, we must read the interrelated sections together to ascertain what acts are penalized.
 

 ' Prom what has been said, it appears that counts I and II rest exclusively upon sections 3 and 4, count III on sections 5 and 6, and count IY on sections 3, 4, and 7. Disregarding section 7, for the time being, we have the premise fixed by the prior decisions above mentioned that neither section 3, which declares generally that, for the persuasive purposes specified therein, it is “unlawful for any person to picket,” nor section 5, which prescribes likewise generally that for such purposes, “It shall be unlawful for any person to . . . display any banner [sign] ... in the vicinity of . . . any place of business,” is complete in itself as a definition of an offense. To give either of those two sections the construction that it is complete in itself would make it comprehensively prohibitive rather than regulatory of the acts of picketing, the latter being the avowed purpose of the enactment.
 

 We have arrived then at a point where we must recognize that section 3, being part of a regulatory enactment, is proscriptive only of acts which are not authorized by section 4, or by sections 3 and 4 when read together. Section 4 declares broadly that the provisions of section 3 shall not apply to picketing at a place of business by the persons and on the conditions described and defined in said section 4. The persons so described are
 
 “bona fide
 
 employees” as that term is defined in section 1. But as we have held in
 
 People
 
 v.
 
 Gidaly,
 
 (1939),
 
 supra,
 
 35 Cal. App. (2d) (Supp.) 758, 93 Pac. (2d) 660, that the limitation as to such
 
 “bona fide
 
 employees” is arbitrary and void, it follows that all persons may engage in picketing subject to t^e conditions otherwise prescribed. It is obviously the limitation as to
 
 bona fide
 
 employees which fails and not the enablement because such enablement is not an exception to section 3 but is a cognate
 
 *Supp. 759
 
 part of the definition of the offense attempted to be created and if it were not effective as an enablement section 3 would not be regulatory of a lawful activity but comprehensively prohibitive of it. In other words, picketing, as such, is recognized in the ordinance as a lawful activity not to be absolutely forbidden but merely regulated and only certain manifestations of it prohibited. It is not the enablement of
 
 “bona fide
 
 employees” to picket that is void but rather the arbitrary restriction of that right to them. It is thus apparent that, under the ordinance as heretofore construed, by us, all persons have an equal right to engage in picketing a place of business.
 

 Looking now to the conditions defined in section 4 under which that right may be exercised, we find that, so far as is pertinent to count I, and the point involved herein, the sole prohibition is that “No
 
 bona fide employee
 
 so designated [in writing after a vote as specified in section 4 (a)] to picket a place of business shall picket such place of business where at the same time more such designated
 
 bona fide employees
 
 are engaged in picketing such place of business than a number equal to one picket for each entrance . . . abutting upon a public place”. (Emphasis added.) The stipulated evidence conclusively establishes that the defendants in this case were not at any time
 
 “bona fide
 
 employees” of the place of business being picketed. Therefore, not only is the prohibition not applicable to any of these defendants as primary actors but also the presence of the others, not being
 
 “bona fide
 
 employees,” did not create the defined situation of more than two
 
 “bona fide
 
 employees” being engaged in the picketing. Whether it was or was not constitutionally competent for the legislative body or electorate in defining the offense to predicate it on the participation of
 
 “bona fide
 
 employees” only and not on the presence of members of the public at large, that is the most that has been done and we cannot build up a crime on facts which are not within the definitive language of the penal act. As we said in
 
 People
 
 v.
 
 Zimbrolt,
 
 (1939) 35 Cal. App. (2d) (Supp.) 745, 747 [91 Pac. (2d) 252], “Crimes are not to be ‘built up by courts with the aid of inference, implication, and strained interpretation’
 
 (Ex parte McNulty,
 
 [1888] 77 Cal. 164, 168 [19 Pac. 237, 11 Am. St. Rep. 257]), and ‘penal statutes
 
 *Supp. 760
 
 must be construed to reach no further than their words; no person can be made subject to them by implication’.
 
 (Ex parte Twing,
 
 [1922] 188 Cal. 261, 265 [204 Pac. 1082].)”
 

 If we would essay, in this case, as urged by those supporting the ordinance, to interpret sections 3 and 4 as comprehensively prohibiting picketing to all persons and under all circumstances, excepting only members of the limited class of
 
 “bona fide
 
 employees” and them only when all of the coetaneous conditions prescribed in the ordinance were fully complied with, we should find ourselves under the necessity of holding the proscriptions of such sections wholly void. These defendants would be guilty of violating the ordinance not because more than three had simultaneously participated in picketing a place of business having three entrances contrary to the regulatory measures of section 4, but because they had picketed in violation of the comprehensive prohibition of section 3. That section would be/ in effect, nonexistent so far as
 
 bona fide
 
 employees complying with the required conditions were concerned but would be wholly prohibitive of picketing by any other than a
 
 bona fide
 
 employee and hence would be void as an arbitrary discrimination, for the reasons expounded in our prior decisions in
 
 People
 
 v.
 
 Tilkin, supra,
 
 and
 
 People
 
 v.
 
 Gidaly, supra,
 
 and also, if picketing be regarded as an exercise of the freedom of speech and assembly guaranteed by the federal Constitution, would be void as an arbitrary and unnecessary abridgment of such rights.
 

 As to count II, the pertinent prohibitive definition is found in section 4 (e), “No two such
 
 bona fide
 
 employees while so picketing such place of business shall be within less than twenty-five (25) feet of each other.” For the reasons hereinabove given, the evidentiary showing that none of the defendants was a
 
 “bona fide
 
 employee” disposes of this charge.
 

 Count III is predicated on section 5 and 6 which recognize the right of a picket to display a banner or sign but attempt to forbid the exercise of that right by persons other than
 
 “bona fide
 
 employees” and to strictly limit the language which may appear thereon. For reasons similar to those hereinabove enunciated, it is apparent that the recognition of the right of
 
 “bona fide
 
 employees” to display signs
 
 *Supp. 761
 
 is entirely valid but the arbitrary and discriminatory denial of the exercise of that right to other persons is void. Thus, so far as this ordinance is concerned, all persons picketing a place of business may carry banners.
 

 The signs carried by defendants complied with the ordinance requirements (sec. 6) as to size and as to setting forth (sec. 6 [i]) the name or initials of the organization represented by the defendants but failed to contain the word “picket,” as required by section 6 (ii), a.nd did contain the statements (on that carried by Garcia) “Berg Metal Works Unfair to Organized Labor” and (on Popoff’s) “We Want Decent Wages, ” in violation of the restriction of section 6 (iii) limiting the language, other than that required by clauses lettered (i) and (ii), to “the statement that a strike is in progress at the place of business so being picketed, including the name or address of such place of business ’ ’. Whether or not a person engaged in picketing and displaying a banner or sign can lawfully be compelled to have the word “picket” on any sign displayed, we need riot now determine because the complaint does not charge that offense nor does the respondent seek to support the judgment on that theory. The charge is laid entirely on the use of language and lettering on the sign not authorized to be there, i. e., in violation of the “previous restraint”.
 

 The language that was displayed by the defendants on the signs they carried obviously does not constitute a clear and present danger to government and is not otherwise objectionable as being obscene, indecent or contravening public health, morals, safety or welfare. It is ordinary language aptly calculated to convey an idea pertinent to the employees’ side of an argument between employer and employees. The carrying of a sign is a manner of exercising freedom of speech, a publication of ideas, the advertising of a dispute, and is not open to the argument made, impotently or otherwise, in support of laws against free distribution of handbills, i. e., that they tend to litter up streets. As was said in the concurring opinion in
 
 People
 
 v.
 
 Gidaly,
 
 (1939)
 
 supra,
 
 35 Cal. App. (2d) (Supp.) 758, 773, [93 Pac. (2d) 660], ‘ ‘ While a law may be valid which in effect punishes the use of language which has Hie effect of inciting the unlawful use of violence or the commission of crime
 
 (Stromberg
 
 v.
 
 California
 
 
 *Supp. 762
 
 [1931] 283 U. S. 359, 368, 369 [51 Sup. Ct. 532, 75 L. ed. 1117, 1123, 73 A. L. R. 1484]) the end may not (save possibly in such extraordinary situations as are mentioned in the authoritjr next hereinafter cited) be attained through the medium of censorship or previous restraint.
 
 (Near
 
 v.
 
 Minnesota,
 
 [1930] 283 U. S. 697, 716, 719, 720 [51 Sup. Ct. 625, 75 L. ed. 1357, 1367, 1369];
 
 Lovell
 
 v.
 
 City of Griffin,
 
 [1938] 303 U. S. 444, 451 [59 Sup. Ct. 666, 82 L. ed. 949, 953] ;
 
 Hague
 
 v.
 
 Committee for Industrial Organization,
 
 [1939] 307 U. S. 496 [59 Sup. Ct. 954, 83 L. ed. 1423].) ‘These rights [freedom of speech, press and assembly] may be abused by using speech or press or assembly in order to incite to violence and crime. The people through their legislatures [or by the initiative] may protect themselves against that abuse. But the legislative intervention can find constitutional justification only by dealing with the abuse. The rights themselves must not be curtailed. ’
 
 (DeJonge
 
 v.
 
 Oregon,
 
 [1936] 299 U. S. 353, 364, 365 [57 Sup. Ct. 255, 81 L. ed. 278, 284].)'” As further authority for the propositions declared in the foregoing quotation may now be added the citation of
 
 Schneider
 
 v.
 
 State,
 
 (1939) 308 U. S. 147 [60 Sup. Ct. 146, 84 L. ed. 115]. The word “banner” as used in section 6 of our city ordinance is defined in section 1 (e) to include in its meaning any “sign” or “paper”. Hence, if we were to hold here that the ordinance is valid in its “previous restraint” or limitation of the words that may be printed, and consequently of the ideas that may be conveyed, on “banners” it would also follow, as suggested in the concurring opinion in
 
 People
 
 v.
 
 Gidaly,
 
 (1939),
 
 supra,
 
 35 Cal. App. (2d) (Supp.) 758, 771 [93 Pac. (2d) 660], that “A newspaper or hand-bill carrying the story of a labor dispute and expressing the claims of either side would clearly be prohibited from display to the public (whether on public or private property) in the vicinity of a place of business at which a strike was in progress.” Obviously, as declared in that opinion, such a law is void in that it transgresses “the irremissibly vetitive provisions of Amendment Number XIV of the United States Constitution, making applicable here the rights declared in Amendment I, and of section 9, Article I, California Constitution.” (See
 
 Schneider
 
 v.
 
 State,
 
 (1939),
 
 supra,
 
 308 U. S. 147 [60 Sup. Ct. 146, 84 L. ed. 115].)
 

 
 *Supp. 763
 
 Count IY, under which it was proved that the defendants Seeliger and Pfeiffer, while peacefully picketing, conversationally stated, to all persons whom they 'thought would be interested, “This place is on strike. Don’t work here, ” rests on sections 3 and 4 (e) of the ordinance, and as previously noted, on section 7. Section 4 (c), by its express terms, affects only
 
 “tona fide
 
 employees” and hence, for the reasons more particularly hereinabove elucidated, whatever prohibition is defined by sections 3 and 4 (c), construed together, is not applicable to the defendants here. Section 7 provides that “No person shall make any loud or unusual noise, speak in a loud or unusual tone, or cry out or proclaim, . . . within the hearing of any person ... in the vicinity of . . . any place of business ... in any such manner or with any such intent as described in clauses lettered (i) and (ii) of Section 5 hereof.” The clauses (i) and (ii) refer, respectively, to the manner and intent of: (i) Intimidation or coercion of persons entering, occupying, leaving, or dealing with a place of business, etc, (ii) peaceful persuasion of persons to refrain from entering, occupying, leaving or dealing with a place of business, etc. From the stipulated evidence before us, it is apparent that the only proscription of section 7 possibly applicable to defendants’ conduct is “No person shall . . . proclaim . . . within the hearing of any person ... in the vicinity of . . . any place of business . . . with any such intent as described.”
 

 The word proclaim means (Webster’s New International Dictionary of the English Language, 1930) “To make known by public announcement; to give wide publicity to; to publish abroad; to promulgate; declare,” and as synonyms the same authority gives: “publish, promulgate, announce.” These meanings plainly encompass defendants’ acts; just as plainly the constitutional shields of nation and state preserve to defendants the right to do those acts. All that has been said in the discussion under count III relative to the right of defendants to publish their claims and convey their ideas via the printed banner or page applies equally to their right orally, in orderly and otherwise lawful manner, to express such claims and convey their ideas. Previous prohibition or censorship of the exercise of the right of speech and assembly in appropriate public places cannot be sus
 
 *Supp. 764
 
 tamed.
 
 (Herndon
 
 v.
 
 Lowry,
 
 (1937) 301 U. S. 242, 258 [57 Sup. Ct. 732, 81 L. ed. 1066, 1075] ;
 
 Hague
 
 v.
 
 Committee for Industrial Organisation,
 
 (1939) 307 U. S. 496 [59 Sup. Ct. 954, 83 L. ed. 1423];
 
 Schneider
 
 v.
 
 State,
 
 (1939) 308 U. S. 147 [60 Sup. Ct. 146, 84 L. ed. 115].) Hence section 7 of the ordinance, in so far as it purports to deny to any person the right to proclaim, i. e., to “publish, promulgate, announce” his ideas, without loud or unusual noise and in an orderly and otherwise lawful manner, is void.
 

 The trail which we have pedetentously blazed through the maze of conflicting prohibitive and enabling implications of said sections 3, 4, 5 and 6 of the picketing ordinance is not the only route of reason to the conclusions reached. The terms
 
 “bona fide
 
 strike” and
 
 “bona fide
 
 employee” are defined in the ordinance and those definitions are set forth in our opinion in
 
 People
 
 v.
 
 Gidaly, supra,
 
 (1939) 35 Cal. App. (2d) (Supp.) 758 [93 Pac. (2d) 660], The arbitrary and discriminatory classifications with which sections 3 and 5 are inoculated by sections 4 and 6 through the application of the conditions and limitations found in the definitions of said terms
 
 “bona fide
 
 strike” and
 
 “bona fide
 
 employee,” permeate the whole structure of said sections. Sections 4 and 6 are “bone and sinew” of sections 3 and 5. Without 4 and 6, sections 3 and 5 are incongruent to the objects of the ordinance and inconsistent with its purpose; they would abolish, not regulate picketing. Yet the very provisions of sections 4 and 6 which are essential to give reason to sections 3 and 5 are themselves unreasonable and void in substantially every respect save wherein they in effect repeal said sections 3 and 5. Of an analogically similar condition, Mr. Justice Cardozo spoke when he said (concurring in
 
 Schechter
 
 v.
 
 United States,
 
 (1935) 295 U. S. 495, 555 [55 Sup. Ct. 837, 79 L. ed. 1570, 1593, 97 A. L. R. 947]) “To take from this code the provisions as to wages and the hours of labor is to destroy it altogether. If a trade or an industry is so predominantly local as to be exempt from regulation by the Congress in respect of matters such as these, there can be no ‘code’ for it at all. . . . Wages and the hours of labor are essential features of the plan, its very bone and sinew. There is no opportunity in such circumstances for the severance of the infected parts in the hope
 
 *Supp. 765
 
 of saving the remainder. A code collapses utterly with bone and sinew gone.” And so also do collapse those sections of this ordinance regulating picketing—sections 3, 4, 5 and 6. Sections 4 and 6 are the Siamese twins of 3 and 5, joined vitally; sections 4 and 6 being fatally infected, constitutionally, have been declared substantially defunct by the decisions in
 
 People
 
 v.
 
 Tilkin,
 
 (1939),
 
 supra,
 
 and
 
 People
 
 v.
 
 Gidaly,
 
 (1939),
 
 supra;
 
 their twins cannot be severed nor can they be given independent vitality.
 

 The judgments are in each ease reversed and the causes are remanded to the municipal court with directions to dismiss the complaints.
 

 Shaw, P. J., and Bishop, J., concurred.