[Civ. No. 2867.   Fourth Dist.   June 17, 1943.]

I. B. GAYER, Respondent, v. THOMAS WHELAN, as District Attorney, etc., Appellant.

Thomas Whelan, District Attorney, in pro. per., and Duane J. Carnes, Deputy District Attorney, for Appellant.

Morris Lavine, Arthur Mohr, Charles W. Lyon and Swing & Swing for Respondent.

·MARKS, J.—This is an appeal from a judgment ordering the return to plaintiff of fourteen pin ball machines which defendant, in his capacity as District Attorney of San Diego County, had seized and proposed to destroy under the provisions of section 335a of the Penal Code.

The parties agree that the findings are supported by the evidence and fairly present the issue raised on this appeal. Therefore we will look to the findings for a brief summary of the facts.

Plaintiff owned fourteen pin ball machines which were placed in various business houses in the city of Escondido for operation by the public. On October 29, 1941, defendant in his capacity as District Attorney of San Diego County, seized them as lottery or gambling devices and gave notice of his intention to destroy them summarily. Plaintiff brought this action to recover their possession and was given judgment. The trial court found:

"That said machines and each of them were slot machines, contrivances and mechanical devices which were played and operated by placing and depositing therein coins, by means whereof and as a result of the operation of which it was possible in part by skill in such operation but mainly by hazard and chance in the result of such operation to win the opportunity to thereafter play one or more free games, that is to further operate the machine or contrivance without the deposit or placing therein of any additional coin or coins.

"That no merchandise, money, representative or articles of value, checks or tokens, redeemable in, or exchangeable for money or any other thing of value, was won or lost or taken from or obtained from such machines, nor was anything so won, lost or obtained except free games hereinabove

referred to; that said free games were represented upon said machines by means of an electric light illuminating a number which showed the number of free games won; that said free games were obtained from said machines by automatic release of the coin slot attached to the machines, thereby permitting the winner to play said free games without depositing additional coins in the machines in payment therefor; that the players of said machines did not obtain therefrom any tangible tokens, checks, tickets or other physical representative or token of value.''

Defendant maintains that the foregoing findings do not support the judgment for the reason that the free games that could be won on the machines represented such an award of value that it brought their operation within the statutes prohibiting lotteries and gambling on such devices. This is the sole question presented on this appeal. It is one of first impression in California under the precise facts before us.

The operation of a similar machine is clearly and briefly described in *Middlemas* v. *Strutz*, 71 N.D. 186 [299 N.W. 589]. Reference to that description makes it unnecessary to repeat it here.

While there are no cases precisely in point in California, counsel have been diligent in citing authorities from other jurisdictions. The decisions on the question involved are in conflict.

Among many cases cited by defendant are, *Middlemas* v. *Strutz, supra; People* v. *Gravenhorst,* 32 N.Y.S.2d 760; *State* v. *Wiley,* —— Iowa —— [3 N.W.2d 620]; *Kraus* v. *City of Cleveland,* 135 Ohio St. 43 [19 N.E.2d 159]; *In re Sutton,* 148 Pa.Super. 101 [24 A.2d 756]; *Steely* v. *Commonwealth,* 291 Ky. 554 [164 S.W.2d 977]; *People* v. *One Pinball Machine,* 316 Ill.App. 161 [44 N.E.2d 950]; *Giomi* v. *Chase,* 47 N.M. 22 [132 P.2d 715].

It is conceded that where the machine returns tokens, money, or other articles that may be redeemed for something of value or used to replay the device, as a reward for the player making a high score, or when he may receive money in exchange for a high score, the machine is a gambling device coming within the provisions of the majority of the statutes. A study of many of the cases relied on by defendant discloses the existence of such pay-offs which distinguish them from the instant case and eliminates them from further mention. The only cases we have discovered, relied on by de-

fendant, in which there was not some form of a pay-off following a successful game, are, *Middlemas* v. *Strutz, supra; State* v. *Wiley, supra; Steely* v. *Commonwealth, supra; People* v. *One Pinball Machine, supra,* and *Giomi* v. *Chase, supra.*

The Middlemas case turns upon the definition of the word "effects" which is used in the prohibitory statute of North Dakota. The court held that the right to a free game came within the definition of "effects" and therefore made the machines gambling devices. Our statute is not so broad and contains no such language.

*State* v. *Wiley, supra,* turns on the language of the Iowa statute which classes as a gambling device "any slot machine or device with an element of chance attending such operation." No such provision appears in the California statute.

We are not able to distinguish *Steely* v. *Commonwealth, supra, People* v. *One Pinball Machine, supra, and Giomi* v. *Chase, supra,* from the instant case. They support the position of defendant except perhaps for the difference in rules governing statutory construction prevailing in those jurisdictions and in California.

Plaintiff has been careful not to cite any case in which it appears that there was any kind of a pay-off in connection with the operation of the machine. He cites, among other cases, *People* v. *Jennings,* 257 N.Y. 196 [177 N.E. 419] ; *State* v. *Waite,* 156 Kan. 143 [131 P.2d 708], and *In re Wigton,* 151 Pa.Super. 337 [30 A.2d 352]. *People* v. *Jennings* merely holds that where the high score obtained by the player only entitles him to the amusement of additional free games, there is no reward of sufficient value to bring the machine within the definition of a gambling device. *State* v. *Waite, supra, In re Wigton, supra,* and *Commonwealth* v. *A Certain Gambling Device,* 151 Pa.Super. 346 [30 A.2d 357], seem to be exactly in point with the instant case. They hold that the reward of free games for a high score is not of material value and does not bring the pin ball machine within the definition of a gambling device.

Little can be gained by further review of cases from other jurisdictions. However, before passing this phase of the case, it should be observed that in practically all of the cases cited by defendant it has been said that the reward of free games for a high score is a thing of sufficient value to render the machine a gambling device or lottery. With few exceptions this is dictum in the opinions in which it appears.

Section 335a of the Penal Code provides in effect that after due proceedings taken, any peace officer may seize and destroy any machine or device, the possession or control of which is penalized by the state laws prohibiting lotteries or gambling. Defendant maintains his right to destroy the pin ball machines because their possession is penalized by both the lottery and gambling laws of the state.

Section 319 of the Penal Code defines a lottery as follows:

"A lottery is any scheme for the disposal or distribution of property by chance, among persons who have paid or promised to pay any valuable consideration for the chance of obtaining such property or a portion of it, or for any share or any interest in such property, upon any agreement, understanding, or expectation that it is to be distributed or disposed of by lot or chance, whether called a lottery, raffle, or gift-enterprise, or by whatever name the same may be known."

It is at once apparent from the clear language of the section that in order to constitute a lottery two or more persons must have paid or promised to pay a consideration for the chance of obtaining the prize or a part of it or a share or an interest in it to be distributed by lot or chance between or among them.

This definition excludes the pin ball game from consideration as a lottery. But one person can play or operate it at a time. That person places his nickel in the slot and he alone operates the machine. He alone reaps the reward of a free game or games. There is no distribution of the reward, if any, as it must be enjoyed by the one player. There is neither opportunity for contribution to the fund for the right to play, nor any chance for distribution of the reward among several who might have paid a required fee for such a privilege. This clearly eliminates the pin ball machine from consideration as a lottery device, as defined in the statute, without consideration of the question of the free game being "property."

Defendant relies on the case of *People* v. *Settles*, 29 Cal. App.2d Supp. 781 [78 P.2d 274], as supporting his argument that the pin ball machine is a lottery device. The statement of facts in the Settles case is too brief for us to determine the exact nature of the game there held to be a lottery. The court stated that to a certain point the game resembled that of Tango as described in *People* v. *Babdaty*, 139 Cal.App. Supp.

791 [30 P.2d 634]. From this description we conclude that the game involved in *People* v. *Settles*, and there held to be a lottery, bears no resemblance to the pin ball games we have here so that case cannot be considered as authority here.

Section 330a of the Penal Code provides in part as follows:

"Every person, who has in his possession or under his control, either as owner, lessee, agent, employee, mortgagee, or otherwise, or who permits to be placed, maintained or kept, in any room, space, inclosure or building owned, leased or occupied by him, or under his management or control, any slot or card machine, contrivance, appliance or mechanical device, upon the result of action of which money or other valuable thing is staked or hazarded, and which is operated, or played, by placing or depositing therein any coins, checks, slugs, balls, or other articles or device, or in any other manner and by means whereof, or as a result of the operation of which any merchandise, money, representative or articles of value, checks, or tokens, redeemable in, or exchangeable for money or any other thing of value, is won or lost, or taken from or obtained from such machine, when the result of action or operation of such machine, contrivance, appliance, or mechanical device is dependent upon hazard or chance, . . . is guilty of a misdemeanor, . . ."

The first requirement of the section is that the mechanical device be operated by money or other thing of value which is risked or hazarded by the player. That requirement is met by the pin ball machine which is operated by the deposit of a nickel in its mechanism. The remaining question is this: Does the amusement afforded by a free game, or games, awarded the player for a high score amount to "merchandise, money, representative or articles of value, checks, or tokens, redeemable in, or exchangeable for money or any other thing of value"? The existence of at least one of these factors is made necessary by the statute in order to classify the machine a gambling device.

Certainly the amusement of a free game is neither merchandise nor money nor checks nor tokens redeemable in or exchangeable for any other thing of value. Merchandise and money are tangible articles that do not include the intangible amusement of a free game. Their definitions are too clear and well known to require argument supporting this conclusion. The same should be true of checks or tokens redeemable

or exchangeable for money or any other thing of value. Those checks or tokens must of necessity be at least material or visible in order to be exchangeable.

In some cases from other jurisdictions it appears that the high score was shown in illuminated numbers on the machine and the player was rewarded by the delivery of money or merchandise thereby won. Such transactions were held to be sufficient to bring the machines within the prohibitions of the law. Here nothing of the kind occurred. The machine registered the score but the player received nothing in exchange for it but the right to continue the game. He received no check or token that he could exchange for anything.

Defendant maintains that the language of the section, "or as a result of the operation of which any . . . representative or articles of value . . . is won or lost," is broad enough to include the amusement of a free game.

In support of this argument he relies on what was said in the cases already cited, to the effect that a free game giving amusement to the player is something of sufficient value to render the machine a gambling device. He argues that the words "representative or articles of value" have the precise meaning of "things of value," and concludes that the free game was a representative or article of value under the cases already cited. He bases his argument on the fourth definition of "article" in the New English Dictionary, Oxford, 1888, Volume 1, page 471, which is as follows: "A separate thing (immaterial or material)," and on the following definition in Century Dictionary, 1911: "Article . . . 6. A material thing as part of a class, or absolutely, a particular substance or commodity: as an article of merchandise; an article of clothing; salt is a necessary article. 7. A particular immaterial thing; a matter."

In Webster's New International Dictionary, "representative" is defined as follows: 1. "One that represents; a person or thing that represents, or stands for, a number or class of persons or things, or that in some way corresponds to, stands for, replaces, or is equivalent to, another person or thing; a typical embodiment; type."

The usually accepted definition of "thing " is an inanimate object as contradistinguished from person. (Black's Law Dictionary, 3rd ed.) Applying these two definitions to the facts here would indicate that in order to constitute the pin

ball machine a gambling device, in so far as the use of the word "representative" in section 330a of the Penal Code is concerned, the numbers displayed when a high score is obtained would have to represent or stand for some inanimate object which the player would receive as a reward for the high score. The trial court found that the player received no such thing and certainly the right to the amusement of a free game cannot be classed as such inanimate object.

In *Junge* v. *Hedden,* 146 U.S. 233 [13 S.Ct. 88, 36 L.Ed. 953], it was said: "In common usage, 'article' is applied to almost every separate substance or material, whether as a member of a class, or as a particular substance or commodity." In *People* v. *Epstean,* 102 Misc. 476 [170 N.Y.S. 68], "article" was held to mean a particular object or substance, a material thing or class of things. (See, also, *Carter* v. *Wilmington etc. Co.,* 126 N.C. 437 [36 S.E. 14]; *Junge* v. *Hedden,* 37 F. 197; *Harrison Supply Co.* v. *United States,* 171 F. 406 [96 C.C.A. 362].)

It would therefore seem that the usual and ordinary meaning of the word "article" is some material or tangible object, although, according to the definitions submitted by defendant, occasionally it may be used to refer to something "immaterial."

█ It is a cardinal rule of statutory construction that where the language of a statute is free from ambiguity, when the words used are given their ordinary and usual meaning, the courts should not look further in its interpretation and should not change its effect by giving the words some unusual or seldom used meaning. (*Bagg* v. *Wickizer,* 9 Cal. App.2d 753 [50 P.2d 1047]; *Taylor* v. *Lundblade,* 43 Cal.App. 2d 638 [111 P.2d 344]; *People* v. *Stanley,* 193 Cal. 428 [225 P. 1]; *Pacific Coast Dairy* v. *Police Court,* 214 Cal. 668 [8 P.2d 140, 80 A.L.R. 1217].) Here we find no reason to ascribe to the word "article" the rather unusual definition which defendant would have us give it.

As was said in *People* v. *Garcia,* 37 Cal.App.2d Supp. 753 [98 P.2d 265]:

"As we said in *People* v. *Zimbrolt,* (1939) 35 Cal.App.2d Supp. 745, 747 [91 P.2d 252], 'Crimes are not to be "built up by courts with the aid of inference, implication, and strained interpretation" (*Ex parte McNulty,* [1888] 77 Cal. 164, 168 [19 P. 237, 11 Am.St.Rep. 257]), and "penal statutes must be construed to reach no further than their words; no

person can be made subject to them by implication." (*Ex parte Twing*, [1922] 188 Cal. 261, 265 [204 P. 1082].)' "

Under the foregoing rules of statutory construction we are required to hold that the clause of section 330a of the Penal Code, under consideration, must mean that the representative, or article of value, obtained through a high score on the pin ball machine, must be some material or tangible thing of value, and that securing the amusement of a free game or games on the machine, and nothing more, does not come within that definition and is not within the prohibition of the section.

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 12, 1943. Shenk, J., Curtis, J., and Traynor, J., voted for a hearing.