COMMONWEALTH *vs.* TIMOTHY E. SULLIVAN.
SAME *vs.* WILLIAM O'HALLORAN.

Middlesex.   December 13, 1913. — June 17, 1904.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, SHELDEN, DE COURCY, & CROSBY, JJ.

*Keeping Room for Registering Bets or Buying or Selling Pools.*

Upon a complaint under R. L. c. 214, § 17, for keeping a room for the purpose of registering bets or of buying or selling pools, the offense is made out if the room is shown to have been kept for either of these unlawful purposes.

The keeping of a room for the purpose of selling books for twenty-five cents each, having coupons attached for guessing the winners at certain baseball games, the money received from the sale of the books constituting a pool out of which prizes were paid to the winners in the guessing contest, can be found to be a violation of R. L. c. 214, § 17.

TWO COMPLAINTS received and sworn to on May 15, 1912, each against a different defendant, under R. L. c. 214, § 17, for keeping certain rooms on the first and second stories of a building numbered 7 on Spring Street in Watertown for the purpose of registering bets and of buying and selling pools upon the results of certain games of baseball.

In the Superior Court the cases were tried together before *Chase,* J., and the Commonwealth offered the evidence which is described in substance in the opinion. The defendants offered no evidence and asked the judge to order verdicts of not guilty on the ground that the evidence was insufficient to warrant a conviction. The judge refused to do this, and instructed the jury that they would be warranted in returning a verdict of guilty against each defendant.

The jury returned verdicts of guilty; and the judge reported the cases for determination by this court. If the evidence warranted a verdict of guilty, the verdict in each case was to stand; otherwise, the verdicts were to be set aside and verdicts of not guilty were to be entered.

The cases were submitted on briefs at the sitting of the court in December, 1913, and afterwards were submitted on briefs to all the justices.

*W. S. Peters, H. J. Cole & F. H. Tilton,* for the defendant Sullivan.

*W. H. McSweeney, M. J. McSweeney & F. H. Caskin,* for the defendant O'Halloran.

*J. J. Higgins,* District Attorney, *& C. J. Wier,* Assistant District Attorney, for the Commonwealth.

RUGG, C. J. The defendants severally were charged under R. L. c. 214, § 17, with keeping rooms with apparatus, books and devices for the purpose of registering bets and of buying and selling pools upon the results of certain games of baseball. There was evidence tending to show that the defendants kept the rooms and there kept and sold, for twenty-five cents each, books entitled, "American and National League Baseball Schedule and Record Book." The book was exhibited in evidence and is described in the record as containing many advertisements and a schedule of dates when and places where baseball games were to be played by the various clubs belonging to the American and National Leagues together with some other information. One page contained two coupons to be filled out in duplicate "by writing in the names of the baseball clubs which the contestant believed would score the greatest number of runs on each day of the following week." One coupon was to be given to one of the defendants and the other kept by the contestant. The names

of six different baseball teams could be used, but the name of one could not be used twice during the same week. Prizes of considerable amounts were offered.

While the selling of a pool and the registering of a bet is criminal, the offense of keeping a room for either or both of these purposes is single and is made out if the room is used for either unlawful purpose. *Commonwealth* v. *Moody,* 143 Mass. 177. *Commonwealth* v. *Clancy,* 154 Mass. 128. A pool has been defined as "a combination of stakes, the money derived from which was to go to the winner." *Commonwealth* v. *Ferry,* 146 Mass. 203. This does not mean, however, that all the money derived from the combination of stakes must go to the winner. Commonly the man who runs the pool makes something out of the transaction. It is enough to constitute the criminal offense if there is a combination of stakes a part of which is to go to the winner. Whether these books were worth twenty-five cents, or whether the whole scheme was an ingenious contrivance for selling pools upon the result of guesses as to the number of runs to be made by baseball teams, was a question of fact to be determined by the jury. The evidence is susceptible of the inference that the twenty-five cents paid nominally for the purchases of coupon books constituted a pool out of which were paid the prizes to the winners in the guessing contest. Whether the aggregate of the prizes constituted the entire pool does not appear in the evidence and is of no consequence. But it is enough if the proceeds of the so called purchases of the coupon books constituted a fund out of which the so called prizes, — in fact the proceeds of the pool, — were paid to the winners in the game of chance. The jury saw the coupon book. They might have said that it was plainly worthless and that the real transaction was that the so called purchaser put up twenty-five cents in return for the coupons upon which to make his bets, and that the so called prizes were paid out of the pool produced by the aggregate of these twenty-five cent payments.

The transaction might also have been found to be a registering of bets. A bet is the hazard of money or property upon an incident by which one or both parties stand to lose or win by chance. See *Lang* v. *Merwin,* 99 Maine, 486, 488. In substance, this transaction may have been found to be a bet that the ball teams selected by the purchaser of the book would make the given num-

ber of runs, and upon the accuracy of that bet he stood the chance of winning the amount of the prize. In the opinion of a majority of the court, the entry in each case must be

*Exceptions overruled.*