## TERRITORY *v.* A. W. BEESON.

## No. 956.

### EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.
### HON. C. W. ASHFORD, JUDGE.

ARGUED JULY 27, 1916.                    DECIDED AUGUST 10, 1916.

ROBERTSON, C.J., WATSON AND QUARLES, JJ.

LOTTERIES—*slot machine—criminal law.*

> Defendant conducted a slot machine whereby each nickel played into it brought to the player a package of gum, and, at irregular and uncertain times, dropped into a cup for the player trade

checks redeemable in merchandise at five cents each, and in multiples of two, the maximum number of trade checks which might be received being twenty; the machine is so arranged that each operation shows just what the succeeding one will distribute; by a series of operations the player may or may not receive trade checks exceeding in value the amount of money which he deposits: Held, that the distribution of merchandise other than the gum involves the element of chance and is a lottery within the meaning of Secs. 4169, 4170, R. L.

### OPINION OF THE COURT BY QUARLES, J.

The defendant was charged in the district court of Honolulu with the offense of conducting a lottery, the charge being that he did "on or about the 23rd day of May, 1916, and for one week prior thereto, in the district of Honolulu, City and County of Honolulu, T. H., contrive, prepare, set up, maintain and conduct a certain lottery, to wit: a slot machine for the distribution of property by chance among persons who have paid a valuable consideration for the chance of obtaining a share or interest in such property upon an agreement, understanding or expectation that it is to be distributed or disposed of by lot or chance by whatever name the same may be known, contrary to the provisions of section 4170 R. L. 1915." To the said charge in the district court the defendant entered a plea of not guilty and was tried and convicted. He appealed generally from the judgment of conviction to the circuit court where he waived a trial by jury, was tried *de novo* and again convicted. The case comes here on an exception to the decision and judgment of conviction on the ground that the same are contrary to law and contrary to the evidence. Evidence was introduced in the lower court showing how the slot machine mentioned in said charge is operated. The slot machine itself was introduced in evidence and its operation shown in court. It is admitted by the defendant that he owns and operates the machine. The machine stands

about four feet in height. Facing the machine small portions of three tapes or ribbons may be seen through a convex window, arranged vertically in the machine, which tapes or ribbons revolve on discs or other contrivances, each having a different velocity from the other. At the top a nickel or American five cent piece is placed in a slot and drops through a tube into the interior of the machine. The operator then pulls a lever which sets in motion the inner mechanism of the machine whereby a package of gum containing three sticks, which, when the machine ceases to revolve—and it does this quickly—the operator or player may by pulling another lever, remove, otherwise it moves to a different place, when the first lever is again manipulated. At irregular times metal trade checks in multiples of two, running from 2 to 20, drop into a cup and are removed by the operator or player. These checks are redeemable at the rate of five cents each in merchandise at the store where the machine is conducted. On examination of the said tapes or ribbons before each manipulation of the lever, and also of the small window in which a figure representing the number of trade checks, if any, to be distributed by the next manipulation of the machine, the player or operator can tell exactly what the next play or operation will distribute. Each play distributes one package of gum provided the operator pulls the second lever and takes it, and if the figure 2 or some other figure appears in the window where the numbers are shown the player knows how many trade checks he will get with the gum.

Arthur McDuffie testified in the lower court that on or about May 23 of the present year he went to a cigar store on Nuuanu street in Honolulu in which the slot machine in question was conducted; that he went there for the purpose of playing said slot machine; that he played twenty nickels one at a time into the machine, drew nothing but gum seventeen times, drew eight trade checks and a pack-

age of gum at one time, four trade checks and a package of gum at another time, and two trade checks and a package of gum at another time, receiving for the dollar or twenty nickels which he played twenty packages of gum and fourteen trade checks. The evidence showed that similar gum of five sticks to the package sells on the market for five cents, hence the retail market value of the gum delivered by the machine is three cents per package, so that the witness received sixty cents worth of gum and trade checks which he could exchange in the cigar store for goods there sold to the value of seventy cents.

At the hearing in this court the machine was present and was operated by counsel for the defendant. Three operations successively resulted in the distribution of three packages of gum and twelve trade checks, thus returning for the fifteen cents played into the machine in these three operations nine cents worth of gum and goods represented by the trade checks to the value of sixty cents, a return of sixtynine cents in merchandise for the fifteen cents deposited in the slot of the machine. At the request of one of the justices counsel for defendant then manipulated the machine twenty times in succession with the result that twenty packages of gum were withdrawn from the machine, and the fifteenth operation dropped two trade checks and the seventeenth operation dropped four trade checks, thus making a return for the dollar played, sixty cents worth of gum and trade checks to the extent of thirty cents. We are satisfied from the evidence in the case that gum is distributed by the machine, so long as it is loaded with gum, without the element of chance having anything to do with it—every separate manipulation of the levers bringing a package of gum which the player may withdraw. We are equally satisfied that goods of the owner of the machine represented by the trade checks are distributed by chance through the scheme upon which the interior mechanism

of the machine is arranged irregularly or at uncertain times over which the players have no control.

It is argued by counsel for the defendant with much force and seriousness that each operation of the machine is separate and distinct from all others; that the machine indicating in advance just what the result will be—one package of gum and a certain number of trade checks, or none—it is simply a question of contract—an offer on the one part and an acceptance on the other, so that there is no element of uncertainty or chance about it. This would be true, perhaps, if each player were confined to one play, in which event the impelling element of chance which appeals to the gaming instinct would be entirely lacking with the result that very few, if any, would play the machine just to get three cents worth of gum for five cents. If the machine said, "Put in a nickel, pull the lever and I will give you three ordinary sticks of gum, but you cannot play me but one time," there would be no element of chance; but is not what it says this? "Put in your nickel, pull lever No. 1 and then pull lever No. 2 and I will give you a package of gum containing three sticks and will then make you another offer which will consist of a similar package of gum and may consist also of trade checks consisting of even numbers, not less than 2 nor more than 20; try your luck, may be you will get a dollar's worth of trade checks and your gum the next time although I only offer you a three-stick package of gum now." This is really the scheme upon which the machine is operated and involves the element of chance so far as the disposal or distribution of the goods represented by the trade checks is concerned and is a lottery within the meaning and intent of sections 4169, 4170 of the Revised Laws, which are as follows:

"Sec. 4169. Lottery defined. A lottery is any scheme for the disposal or distribution of property by chance among persons who have paid or promised to pay valuable consid-

eration for the chance of obtaining such property, or a portion of it, or for any share or any interest in such property upon any agreement, understanding or expectation that it is to be distributed or disposed of by lot or chance, whether called a lottery, raffle, che fa, pakapio, gift enterprise or by whatever name the same may be known."

"Sec. 4170. Maintaining or assisting, etc. Every person who contrives, prepares, sets up, draws, maintains or conducts, or assists in maintaining or conducting any lottery is guilty of a misdemeanor."

"Owners and operators of slot machines and wheels of fortune have been held guilty of operating lotteries within penal statutes, even though those who deposited coin in the machines were assured of the ordinary return for their money in addition to the chance of securing a prize" (25 Cyc. 1638, 1639).

In *People* v. *Jenkins,* 138 N. Y. S. 449, a similar machine was held to be a gambling device under an antigambling statute. After describing the machine and its operation the court said:

"It thus appears that with the dropping of a nickel the depositor always gets his package of gum and always knows the exact number of trade checks which he will receive for that nickel. The element of chance lies in the fact that upon the turning of the lever and the deposit of the gum and number of checks indicated there is further indication of how many trade checks, if any, may be obtained upon the dropping of the second nickel. The number of trade checks, however, which can be obtained upon the dropping of the second nickel is only indicated after the first nickel has dropped and the lever turned. Thus, in addition to the gum and the trade checks indicated as the certain receipts upon the dropping of the nickel, is given an option to obtain a package of gum and an uncertain number of trade checks upon the dropping of the second nickel. That this uncertain option has in it such an element of chance as constitutes gambling can hardly be questioned. In fact, this element of chance only gives to the machine its value, and that its use is within the direct prohibition of the statute seems clear."

The case of *Yale Wonder Clock Co.* v. *Surman,* 105 N. Y. S. 1151, which was affirmed in 193 N. Y. 632, is easily distinguished from the case at bar in that accompanying the yale wonder clock was a chart indicating not only how much was to be received for the nickel deposited but also how much was to be received for each subsequent nickel deposited, so that by an examination of the chart the exact return for the nickel was ascertainable and there was no element of chance. In harmony with the New York case is that of *Ferguson* v. *State,* 178 Ind. 568.

The exception is overruled.

*A. M. Cristy,* First Deputy City and County Attorney (*A. M. Brown,* City and County Attorney, with him on the brief) for the Territory.

*A. D. Larnach* and *J. T. DeBolt* for defendant.