TERRITORY OF HAWAII *v.* MITCHELL SUR.

NO. 2800.

ARGUED FEBRUARY 20, 1952.               DECIDED APRIL 4, 1952.

TOWSE, C. J., LE BARON AND STAINBACK, JJ.

OPINION OF THE COURT BY TOWSE, C. J.

The defendant was convicted of assisting in maintaining and conducting a lottery in violation of section 11341 of Revised Laws of Hawaii 1945: "Every person who contrives, prepares, sets up, draws, maintains or conducts, or assists in maintaining or conducting any lottery is guilty of a misdemeanor." A lottery is defined as "* * * any scheme for the disposal or distribution of property by chance among persons who have paid or promised to pay any valuable consideration for the chance of obtaining the property, or a portion of it, or for any share or any interest in the property upon any agreement, understanding or

expectation that it is to be distributed or disposed of by lot or chance, whether called a lottery, raffle, che fa, pakapio, gift enterprise or by whatever name the same may be known." (R. L. H. 1945, § 11340.)

The five assignments of error are consolidated into two issues: first, whether the element of chance necessary to constitute a lottery is present in the instant scheme; second, whether the admission in evidence of a newspaper account as proof that football games were played on a specific date constituted error.

The method of conducting the alleged lottery consisted of the defendant delivering to the operator of the scheme some six or seven hundred ticket stubs 3½" x 6" in size, on one side of which was printed: "SATURDAY, OCT. 30, 1948," and the names of fifty collegiate football teams scheduled to play on that date selected by the operator from various geographical sections of the United States. The condition: "Must be in Friday, Oct. 29," established the closing date for deposit of the wagers and ticket stubs with the operator.

On the reverse side was printed:

"TEST YOUR SKILL

"For Amusement Only

| "Pick 10 Winners | 11 Points |
| " " 13 " | 16 " |
| " " 15 " | 21 " |
| " " 20 " | 51 " |
| " " 25 " | 101 " |

"ALL TEAMS MUST WIN • TIES LOSE"

The operator established the winner-point pay-off odds and the conditions "ALL TEAMS MUST WIN" and "TIES LOSE." References to the testing of the bettor's skill and limitation of the scheme to amusement are immaterial declarations of the operator. The tickets were

perforated in identical halves. The upper half was retained by the bettor and the bottom half was deposited with the operator, both portions bearing corresponding numbers for identification. The defendant's participation in the scheme was as a collector of the stubs from the bettors. Upon delivering them to the operator he stated that: "They were to be used as part of a football pool."

Participation in the scheme consisted of the bettor indicating his choice of the winning teams upon both portions of the ticket. The method of selection was aptly described by a witness: "As you look at the ticket if you think that the team would beat the other team, you mark it." The bettor had the option of choosing any 10, 13, 15, 20 or 25 winning teams upon the odds set for each group, and wagering any amount thereon which he desired in excess of one dollar by indicating the winners and the group selected upon both portions of the ticket.

To win, the bettor was required to have correctly chosen all of the winning teams of the group indicated. Choice of a losing or tie team resulted in loss of the wager. The payoff was dependent upon the amount wagered and the number of winners selected in accordance with the winner-point odds established by the operator; as for example, for each dollar wagered, in the lowest and highest odds of the winner-point groups here offered, a choice of ten winning teams entitled the bettor to 11 points ($11), a choice of twenty-five winning teams to 101 points ($101).

The first assignment presents two questions: first, whether the element of chance necessary to constitute a lottery as defined in section 11340 of Revised Laws of Hawaii 1945 is present; second, if chance is present, whether it predominates over skill.

The defendant's contention is that, while the element of chance may affect or determine the outcome of a football contest, nevertheless, as in horse racing and certain other

contests, the result is predominantly dependent not upon chance but upon the skill of the *players themselves;* and that the statutory terms "scheme * * * by chance" apply to the element of chance in the game, race, or contest itself and not upon the chances or possibilities of winning or losing the amount wagered. Authorities cited in support of this principle reason that the *method* of wagering does not constitute the scheme a mere game of chance since the bettor exercises his reason, judgment and discretion in choosing the particular horse, team or individual contestant to win; and that football games, as horse, foot, or boat races, are therefore games or contests dominantly of skill and not chance. It is here contended, for example, that the winner in a horse race is not determined by chance alone, as the condition, speed and endurance of a particular entry and the skill of the rider are factors affecting the outcome.

The Territory, on the other hand, contends that the element of chance applies to the *method* of wagering, the *means* used in choosing a winner, and the *odds* established; all of which determine the bettor's potential of winning or losing the wager placed on the outcome. In substance, that as in most gambling games or schemes in which a bettor chances a win or loss to the exclusion of skill, the element of chance controls these factors and determines the winner or loser of the wager itself.

Lotteries are prohibited by constitutional or statutory provisions in most States. Federal legislation prohibits the use of the mails for the distribution of lottery tickets and related matter. (18 U. S. C., § 1302.) Section 55 of the Organic Act provides in part: "* * * nor shall any lottery or sale of lottery tickets be allowed * * *." The latter constitutes an express limitation upon our legislative power and designates lotteries *mala prohibita.* Legislation governing lotteries and gaming has been premised upon

these considerations and is to be interpreted accordingly. Statutes prohibiting lotteries should be construed with a view to remedying the mischief intended to be prevented and to suppress all evasions for the continuance of the mischief. (*State ex rel.* v. *Fox Kansas Theatre Co.,* 62 P. [2d], 929, 144 Kan. 687; *State* v. *Stern,* 201 Minn. 139, 275 N. W. 626.) This public policy throws light upon the purpose and meaning of statutes relating to lotteries and gambling. Being penal, however, their terms must receive strict construction and their scope limited within their intent and meaning as so construed.

The decisions upon constitutional and statutory anti-lottery provisions are numerous and conflicting. In general they construe the pari mutuel, bookmaking, and pool schemes of betting for the distribution of prizes dependent in whole or in part upon lot or chance. Pari mutuel is a form of betting on horse or dog racing in which those who bet on a particular winner share in the total stakes less a small percentage to the management or operator. (*The People* v. *Monroe,* 349 Ill. 270, 182 N. E. 439.) Bookmaking is a form of betting in which the bookmaker offers bets at certain odds on particular horses in a race, takes all such bets as persons may choose to make with him at the odds offered, and upon receipt of the wager issues tickets bearing the terms of the bet. Should the horse backed by the bettor lose, he retains the amount wagered; and if the chosen horse wins the bookmaker pays the winner. When an individual places a wager with the bookmaker each stands to win or lose dependent on the outcome of the event. In the transaction a consideration is paid by the individual in the form of a stake which he risks on the uncertain outcome of the event in the hope of winning more. (*United States* v. *Rich,* 90 F. Supp. 624.) A "pool" is a combination of stakes, the money derived from which goes to the winner; it not being necessary, however, that the winner receive

all of the funds of the pool. It is customary that the operator retain a percentage. (*Commonwealth* v. *Sullivan*, 218 Mass. 281, 105 N. E. 895, Ann. Cas. 1916B, 98.) In horse racing and ball games, a "pool" is a combination of a number of persons, each staking a sum of money on the success of a horse in a race, or a contesting team in a game; the money to be divided among the successful bettors according to the amount put in by each. (*Lacey* v. *Palmer*, 93 Va. 159, 24 S. E. 930.)

Lotteries have long been established as embracing "all schemes for the distribution of prizes by chance * * * and includes various forms of gambling"; (*Horner* v. *United States*, 147 U. S. 449; *Yellow-Stone Kit* v. *The State*, 88 Ala. 196, 7 So. 338; *The People* v. *Monroe*, 349 Ill. 270, 182 N. E. 439.) In *King* vs. *Ah Lee and Ah Fu*, 5 Haw. 545, 547, a lottery was held to be a game within the gaming statute of the kingdom: "Whoever, by playing at cards or any other game, wins or loses any sum of money or thing of value, is guilty of gaming." All lotteries are thus classified as a type of gambling, though, in the converse, all variations of gambling do not constitute lotteries.

Precedents interpreting these gambling schemes all recognize the necessity of determining, in order to constitute a lottery, the presence of the three requisite elements of prize, consideration and chance; and of further determining whether the element of chance predominates over skill in any particular scheme. (*Ter.* v. *Beeson*, 23 Haw. 445; *Fitzsimmons* v. *United States*, 156 Fed. 477; *State* v. *Hundling*, 220 Iowa 1369, 264 N. W. 608.) In the absence of any one of these, the scheme is held not to constitute a lottery. By what name a particular scheme is designated is immaterial, the test being whether it presents the common factors of prize, consideration and chance, and the predominance of chance over skill.

The term "chance" is not employed as being synony-

mous with "opportunity." It is used in the sense of being opposed to an event which occurs by play or design, or by the exercise of volition or judgment. It refers to an unforeseen or inexplicable cause, or even an accident. (54 C. J. S., § 2, p. 846.) As one of the essential elements of a lottery, the word has reference to the attempt to attain certain ends, not by skill or any known or fixed rules, but by the happening of a subsequent event, incapable of ascertainment or accomplishment by means of human foresight or ingenuity. (34 Am. Jur., § 6, p. 649.) "* * * that the word 'chance' as used in the statute, must be construed in connection with the word 'lot' and with the words 'lottery, gift enterprise, or similar scheme.' The maxim 'noscitur a sociis' applies, and the meaning of the word 'chance' is to be known or explained by its associates." (*Eastman* v. *Armstrong-Byrd Music Co.,* 212 Fed. 662, 667, 52 L. R. A. [N. S.] 108.)

The scheme presented in the facts before us is dissimilar to the pari mutuel and bookmaking schemes in that the operator himself covers all wagers placed, and in turn "pays off" all which are won. However, to win the bettor must have chosen at least ten winning teams. The instant scheme was referred to at trial as a pool. However it be characterized, we are of the opinion that the element of skill is secondary in view of the handicap or spot which the operator established by his selection of the teams listed combined with the chances of pay-off conditioned upon the bettor's successful choice of all winning teams and not upon the scores of the games. An operator, in establishing these odds and conditions to his advantage, would select and list only those scheduled contests of doubtful outcome and not those wherein a winning team may be selected at ease.

The innumerable variations of schemes, modes and methods of betting, and the practical considerations cre-

ated by the odds offered require consideration of each scheme upon all factors presented. Where, for instance, there are no past performances or available records by which to gauge the comparative merits of opposing teams or individual contestants one's judgment thereon would be largely, if not purely, speculative. And so, even though information or past data according a basis for judgment be available, the factor of chance is ·present, if not predominant, and is to be considered and weighed in its relations to the odds which determine the amount of winnings. This is so even in a scheme wherein the outcome of a contest or performance depends primarily upon skill such as in boxing, wrestling, billiards or other similar contests.

It may well be contended that the skill of the wagerer himself in the selection of winners predominates in schemes such as here presented. We are, however, of the opinion that the amount which the bettor will receive, if he succeeds in selecting all the winners, is exclusively dependent upon chance. The factor of odds, as we conceive it, need not be advertised, or even be an expressed condition of the wager. In the instant scheme, the selection of the opposing teams, and the "Pick —— Winners . . . —— Points" constitutes the so-called odds which set not only the chance of winning the wager, but also determine the amount of winnings, thus establishing the scheme as one predominantly of chance and not of skill.

It is also contended that the pool method of gaming does not involve the "disposal or distribution of property" as required under the statute, there being no common source or "pot" since each wager is an individual wager against the operator. We do not construe the statute as applicable only to schemes wherein property is paid into and from a joint fund. As applied to a lottery scheme the prize may be anything of value offered as an inducement to participate in the scheme. For this purpose, the winnings which

the bettor hopes to receive greater in amount than that wagered, constitute property within the meaning of the statute.

We conclude that the scheme here presented constitutes a lottery within the meaning of section 11341 of Revised Laws of Hawaii 1945.

The subject of assignment of error number two, the news account of the games played, was admitted for the limited purpose of proving that football games were in fact played on a specific date. News accounts of horse races being admissible for that purpose, we perceive no basis of distinction which would warrant its exclusion here. (*Baum* v. *State,* 163 Md. 153, 161 Atl. 244; 2 Wharton, *Criminal Evidence,* § 804, p. 1386.)

Judgment affirmed.

*G. Nakamura* (*Fukushima & Morita* on opening brief, *Fukushima & Nakamura* on reply brief) for plaintiff in error.

*A. R. Hawkins,* Public Prosecutor (also on the brief), for defendant in error.