## TERRITORY OF HAWAII *v.* JAMES M. SHINOHARA.

### No. 3090.

Hon. Mark Norman Olds, District Magistrate.

Argued April 2, 1957.                    Decided May 17, 1957.

Rice, C. J., Stainback and Marumoto, JJ.

OPINION OF THE COURT BY MARUMOTO, J.

The Territory filed in the district court of South Hilo a criminal complaint in which it charged defendant with conducting a lottery in violation of section 11341 of the Revised Laws of Hawaii 1945. The complaint, as supplemented by a bill of particulars, alleged that defendant operated a business known as "Elsie's Fountain"; that he set up in his business establishment a pinball machine known as "Bally Dude Ranch"; that the pinball machine is a device on which games are played, the object of which is to attain high scores by propelling metal balls to a playing surface and causing the balls to drop into openings denoting different scores; that the device is put into operation by the insertion of a nickel into a slot provided for that purpose; that a player wins free games for attaining certain high scores; that high scores are attained principally by chance; that defendant allowed one David Branco to play the device; that David Branco won sixty-five free games; and that defendant paid David Branco $3.25 in lieu of the free games.

Defendant demurred to this complaint on the ground that the allegations were insufficient to charge a violation of section 11341 or the violation of any other criminal statute of the Territory. The district magistrate sustained the demurrer. The case is before this court on a writ of error sued out by the Territory.

It is generally stated that a scheme that includes the three elements of consideration, chance and prize constitutes a lottery. (*Territory* v. *Sur,* 39 Haw. 332.) The complaint alleges all of these three elements. Defendant, however, contends that under the definition of lottery in section 11340 of the Revised Laws of Hawaii 1945 a fourth element is necessary, namely, participation for the prize by more than one person, and that in the operation of the pinball machine described in the complaint only one

person played for the prize.

Section 11341 provides as follows:

"Sec. 11341. *Maintaining or assisting, etc.* Every person who contrives, prepares, sets up, draws, maintains or conducts, or assists in maintaining or conducting any lottery is guilty of a misdemeanor."

Lottery is defined in section 11340 as "any scheme for the disposal or distribution of property by chance *among persons who have paid or promised to pay any valuable consideration* for the chance of obtaining the property, or a portion of it, or for any share or any interest in the property upon any agreement, understanding or expectation that it is to be distributed or disposed of by lot or chance, whether called a lottery, raffle, che fa, pakapio, gift enterprise or by whatever name the same may be known." (Emphasis supplied.)

Defendant bases his contention on the language which is quoted in italics in the foregoing definition. We agree with defendant. We construe the expression "among persons who have paid or promised to pay any valuable consideration" to contemplate a scheme in which more than one person pay or promise to pay a valuable consideration for the chance of obtaining the prize or prizes. The expression "for the disposal or distribution" means that if there is only one prize such prize will be disposed of to one winner among the persons who have paid or promised to pay the consideration for the chance of obtaining the prize and if there are a number of prizes such prizes will be distributed to a number of winners among such persons. In other words, under a lottery as defined in our statute a participant for the prize competes against other participants for the chance of obtaining the prize. The examples given in our statute, such as raffle, che fa, pakapio, and gift enterprise, all involve participation by more than one person for the prize.

It is not so with a pinball machine. In the playing of a pinball machine, only one person pays a consideration for the chance of obtaining the prize. Assuming that the playing of the device is a game of chance and not a game of skill, the player pits his luck not against other players but against the person who provides the device.

There is no prior decision of this court involving a pinball machine. We find several decisions in other jurisdictions which have considered the legality of the operation of such devices. Among such decisions are *Middlemas* v. *Strutz,* 71 N. D. 186, 299 N. W. 589; *Gayer* v. *Whelan,* 59 Cal. App. (2d) 255, 138 P. (2d) 763; *State* v. *Coats,* 158 Ore. 122, 74 P. (2d) 1102; *State* v. *Wiley,* 232 Iowa 433, 3 N. W. (2d) 620; *In re Sutton,* 148 Pa. Super. 101, 24 A. (2d) 756, *Steely* v. *Commonwealth,* 291 Ky. 554, 164 S. W. (2d) 977; *People* v. *One Pinball Machine,* 316 Ill. App. 161, 44 N. E. (2d) 950; *Pepple* v. *Headrick,* 64 Idaho 132, 128 P. (2d) 757; *Giomi* v. *Chase,* 47 N. M. 22, 132 P. (2d) 715. All of these cases, except *Middlemas* v. *Strutz* and *Gayer* v. *Whelan,* involved the question as to whether pinball machines were gaming devices. Only in *Middlemas* v. *Strutz* and *Gayer* v. *Whelan* were courts confronted with statutory definition of lottery similar to ours. However, in *Middlemas* v. *Strutz,* the issue raised in the instant case was not presented to the court. In *Gayer* v. *Whelan,* the issue was squarely raised. The court, after quoting the statutory definition of lottery identical with ours except that che fa and pakapio are omitted from the enumeration of examples of lottery, held:

> "This definition excludes the pin ball game from consideration as a lottery. But one person can play or operate it at a time. That person places his nickel in the slot and he alone operates the machine. He alone reaps the reward of a free game or games. There is no distribution of the reward, if any, as it must be en-

joyed by the one player. There is neither opportunity for contribution to the fund for the right to play, nor any chance for distribution of the reward among several who might have paid a required fee for such a privilege. This clearly eliminates the pin ball machine from consideration as a lottery device * * *."

In *Territory* v. *Beeson,* 23 Haw. 445, this court held that a slot machine was a lottery device. The slot machine involved in that case paid off three sticks of gum for every nickel deposited and in addition thereto trade checks redeemable in merchandise at uncertain and irregular intervals. Except for the fact that a greater element of chance is involved in the operation of a slot machine than in the case of a pinball machine, it seems that there should be no difference between the two as to the applicability of the definition of lottery. A slot machine is played by one person only, as in the case of a pinball machine. However, in *Territory* v. *Beeson,* the precise question raised in the instant case was not presented to the court. That case was decided on the question as to whether the operation of the slot machine involved the element of chance. The only authority cited in support of the decision is *People* v. *Jenkins,* 138 N. Y. S. 449, which construed a New York statute relating to a gambling device, not a statute relating to lottery.

*Territory* v. *Beeson* was decided in 1916. Our legislature has not changed the definition of lottery after the date of that decision. Territory argues that this fact indicates the acquiescence of our legislature in the decision and that the decision has become a part of the statutory definition. Such argument is valid if the prior decision depended on the identical question raised in the instant case. But we do not think that we are precluded by the silence of the legislature from reconsidering a prior decision of this court construing a statute if a question not

previously raised is presented to us and a consideration of such question leads to a different conclusion. In *Helvering* v. *Hallock,* 309 U. S. 106, at page 119, the Supreme Court of the United States stated: "It would require very persuasive circumstances enveloping Congressional silence to debar this Court from reexamining its own doctrines. To explain the cause of non-action by Congress when Congress itself sheds no light is to venture into speculative unrealities." The same court also stated in *Girouard* v. *United States,* 328 U. S. 61, at page 69: "It is at best treacherous to find in congressional silence alone the adoption of a controlling rule of law."

Territory also argues that section 11340 should be construed in the light of the public policy expressed in section 55 of the Organic Act which prohibits the legislature from allowing any lottery. Section 55 of the Organic Act is a restriction on legislative authority, not a restriction on the judiciary. Our function is to interpret the statute as it exists, not to indulge in judicial legislation in the guise of statutory construction. The definition of lottery in section 11340 was first enacted as section 2 of Act 21 of the Laws of the Provisional Government 1893-1894. To this date it has remained in the same language as originally enacted. In the meantime many new schemes not in the contemplation of the original lawmakers doubtless have been devised. If the statute is not flexible enough to embrace such new schemes, it is not for the court to fill the void. In *United States* v. *Weitzel,* 246 U. S. 533, at page 543, the Supreme Court of the United States stated: "Statutes creating and defining crimes are not to be extended by intendment because the court thinks the legislature should have made them more comprehensive." In that case the defendant, a national bank receiver, was indicted under a statute punishing embezzlement by "every president, director, cashier, teller, clerk, or agent" of a

national bank. The prosecution urged upon the Supreme Court that the punishment of defalcation by a receiver was clearly within the reason of the statute and that unless the term "agent" should be construed as including receivers, there was no federal statute under which an embezzling receiver of a national bank could be prosecuted. The Supreme Court deemed such argument as "not persuasive" and affirmed the judgment of the district court which sustained a demurrer to the indictment.

To the same effect is the decision of this court in *Territory* v. *Ah Goon*, 22 Haw. 31. In that case the defendant was convicted in a district court of the offense of using opium and having the same in his possession. The article which the defendant actually used and possessed was yen shee, a residuum left after opium is once smoked. In reversing the judgment of the district magistrate, this court stated at page 32:

"The crucial question presented by the record is, whether the statute prohibits the use, smoking or possession of yen shee? The theory upon which the prosecution proceeds is, that yen shee and opium are one and the same thing and equally within the legislative intent; as well as within the mischief sought to be prohibited by the statute. The application of this theory, however, would render it necessary to extend the scope of the statute by implication beyond its express terms. This, in our opinion, would be judicial legislation,— the creation of a criminal offense by construction * * *.

"That the use of yen shee may be within the mischief sought to be remedied by the legislature in the passage of the statute in question is immaterial; the statute, in express terms, is aimed at the use of opium only, and not at the use of yen shee, regarding which it is silent. 'A penal statute cannot be extended by implication or construction. It cannot be made to embrace cases not

within the letter, though within the reason and policy of the law * * *.' " (Citing 2 Lewis' Suth. Stat. Const., § 521.)

More recently, this court stated in *Territory* v. *Sur, supra,* at page 336: "Statutes prohibiting lotteries should be construed with a view to remedying the mischief intended to be prevented and to suppress all evasions for the continuance of the mischief. * * * Being penal, however, their terms must receive strict construction and their scope limited within their intent and meaning as so construed."

Some concern is expressed that our construction of section 11340 will lay the Territory wide open to the operation of slot machines, popularly known as one-armed bandits. Even if such be the result, the remedy lies with the legislature. In construing a statute, the court must abide by the plain meaning of plain words, whatever the consequences. (*United States* v. *Brown,* 206 U. S. 240.) However, there are significant differences between slot machines and pinball machines. (*United States* v. *Korpan,* 237 F. (2d) 676; *United States* v. *One Bally Dude Ranch, etc.,* 144 F. Supp. 930.) Also, the defendant in this case was charged with violation of section 11341 and our opinion is limited to the question as to whether the operation of a pinball machine constitutes operation of "lottery" as defined in section 11340. This opinion does not extend to the question as to whether the operation of such device, in the manner alleged in the complaint, violates any other criminal statute. As to such question, we express no opinion because it has not been presented to this court.

The order of the district magistrate sustaining defendant's demurrer and dismissing the complaint is affirmed.

*John T. Ushijima* (*Pence & Ushijima* on the brief) for defendant in error.

*Cyril Kanemitsu,* Deputy County Attorney, Hawaii

County (*Yoshito Tanaka,* County Attorney and Prosecuting Officer for the County of Hawaii, with him on the briefs), for plaintiff in error.

DISSENTING OPINION OF STAINBACK, J.

I respectfully dissent from the foregoing opinion of the court. Although dissenting opinions are usually futile and of little value, I cannot concur with the majority of this court in upsetting what has been the law of this Territory for decades (at least since the decision in *Territory* v. *Beeson,* 23 Haw. 445, of August 10, 1916) that the operation of a slot machine is the operation of a lottery within the provisions of sections 11340 and 11341; there is in essence no difference between the operation of a slot machine and that of a pinball game (called the offspring of a slot machine), and this is especially true unless in certain types of pinball games the success is a question of skill and not of chance. No such claim is made in the instant case and it is admitted that the winner of free games may elect to receive cash in lieu of playing more games. The defendant comes not only within the intent but within the express wording of the statute under the well-settled rules of construction that the plural contains the singular, and vice versa, which even is embodied in our statute. (R. L. H. 1945, § 14.)

In the instant case every element of a lottery as determined by hundreds of decisions is present; a player pays a consideration in a game of hazard for the chance of obtaining a larger value either in money or other articles.

The term "lottery" is not a technical term as used in the various statutes prohibiting or regulating the same. It has been defined as " 'A distribution of prizes and blanks by chance; a game of hazard, in which small sums are ventured for the chance of obtaining a larger value, either in money or in other articles.' " (*Horner* v. *United States,*

147 U. S. 449, at 459.)

As generally stated, a lottery is a scheme that includes the three elements: consideration, chance and prize. Counsel for defendant admits that these are necessary elements and all are present but, as stated in his brief, "under the Hāwaiian statute, there must be added one more element, viz., *there must be more than one person participating* in the alleged scheme of lottery. These elements must be considered under the general rule that penal statutes are to be strictly construed." (Emphasis added.)

The district magistrate took the same view in sustaining the demurrer, stating: "From the facts that are contained in the complaint as well as the Bill of Particulars, it appears that only one person, namely David Branco played the particular pinball machine * * * whereas the statute seems to contemplate more than one person as having engaged in a lottery or more than one player engaged in playing the particular pinball machine" and the majority of this court bases its opinion upon the words "among persons"; such words, it says, contemplate that *there must be competition among other persons,* and that *in playing a pinball game only one person pays a consideration for obtaining a prize from him who runs the game,* that the player pits his luck not against other players but against the person who provides the device.

No good reason can be shown where the operator of a device, the playing of which involves every element of a lottery (consideration, chance and prize), pits his luck against only one player (at a time), such operator should not be considered as running a lottery and be punished under our anti-lottery statute just the same as if more players than one were participants. The purpose of the Act is to prevent the evils of gambling by lottery, and the evils are the same whether there are many or one competing at a time against the owner of the device. In fact, as will

be shown hereinafter, such lottery statutes are aimed primarily at the professional gamblers who operate slot, pinball and similar machines.

The words "among persons" include the singular; it is the common rule of construction in all States, and most of them have statutory provisions to that effect, as has Hawaii, that " 'Words importing the singular may extend and be applied to several persons or things, words importing the plural number may include the singular, and words importing the masculine gender may include the feminine and neuter.' " (Crawford, *Statutory Construction, Interpretation of Laws, Statutory Rules for Construction of Statutes,* § 374, p. 755.)

Section 14 of the Revised Laws of Hawaii 1945, as amended by Act 233 of the Session Laws of 1945, provides:

*"Sec. 14. Number and gender.* Words in the masculine gender signify both the masculine and feminine gender, and those in the singular or plural number signify both the singular and plural number, and words importing adults signify youths or children, unless otherwise expressed or obviously intended."

In the lottery statute in question there is neither expression that the plural may *not* include the singular nor is there any such "obvious intent," but quite the *contrary.* In this connection it is interesting to note that the majority opinion referring to the provision for the distribution of the property "among persons," states that "if there is only one prize such prize will be disposed of to one winner" (construing the words "among persons" to "him" or to "her"). Obviously, if the distribution is to be made "among persons," there would have to be more than one winner if we are to use the theory that "among persons" in the first instance requires more than one player! The purpose of such rules appears to be to avoid the use of expressions such as "such person or persons," "himself and themselves,"

"he and/or she and/or they," found in some poorly drawn statutes.

The cases holding that in the construction of statutes the words importing the singular may extend to and be applied to several persons and things, and words importing the plural number may include the singular, are legion; this is true even though the statute may be penal.

We have several Hawaiian cases on such construction. For example: In *Akina* v. *Kai,* 22 Haw. 520, the court held that "the person" may be construed to contain the plural; on the other hand, in the case of *Waterhouse Tr. Co.* v. *Rawlins,* 33 Haw. 265, 266, the court held the plural included the singular, the court stating as follows: "The contrary, and we think more reasonable, view is that the law makers for the sake of brevity purposely made use of the more comprehensive term, cognizant of the rule that the plural also includes the singular * * *."

The case of *State* v. *Holder,* 49 Ida. 514, held that in construing a penal statute the plural must be construed to include the singular.

*Greenleaf* v. *Woods,* 96 S. W. 458 (Ky.), construed the word "his" to mean "their," quoting a Kentucky statute "a word importing the singular number only may extend and be applied to several persons or things as well as to one person or thing; and a word importing the plural number only may extend and be applied to one person or thing as well as to several persons or things."

*In Re Eikel,* 283 Fed. 285, held that singular and plural numbers should be given interpretation as meaning either the singular or the plural.

There are many other cases to the same effect, even where there are no statutory provisions.

The majority opinion cites certain cases from the mainland dealing with lotteries. A California case, *Gayer* v. *Whelan,* 59 Cal. App. (2d) 255, is the foundation stone

in the majority opinion and is the only case that supports even in the slightest the reasoning in the majority opinion. There, the statutory definition of lottery was identical with ours except the Chinese games were omitted from the enumerated examples of lottery. The majority opinion of this court quotes at length from *Gayer* v. *Whelan* what is clearly a dictum to the effect that the pinball game was not a lottery because *only one person* can play or operate it at a time. However, a careful examination of the decision shows that the point quoted in the majority opinion is *dictum,* that the basis of the decision is that the winner of the game gets neither merchandise nor money nor checks nor tokens redeemable in or exchangeable for anything of value. In other words, there is no prize or thing of value given to a winner. At pages 260 and 261 in the *Gayer* case the court stated as follows:

"Certainly the amusement of a free game is neither merchandise nor money nor checks nor tokens redeemable in or exchangeable for any other thing of value. Merchandise and money are tangible articles that do not include the intangible amusement of a free game. Their definitions are too clear and well known to require argument supporting this conclusion. The same should be true of checks or tokens redeemable or exchangeable for money or any other thing of value. Those checks or tokens must of necessity be at least material or visible in order to be exchangeable.

"In some cases from other jurisdictions it appears that the high score was shown in illuminated numbers on the machine and the player was rewarded by the delivery of money or merchandise thereby won. *Such transactions were held to be sufficient to bring the machines within the prohibitions of the law. Here nothing of the kind occurred. The machine registered the score but the player received nothing in exchange*

*for it but the right to continue the game.* He received no check or token that he could exchange for anything." (Emphasis added.)

The court concludes and bases its decision as follows:

*"Under the foregoing rules of statutory construction we are required to hold* that the clause of *section 330a* of the Penal Code, under consideration, *must mean that the representative, or article of value, obtained through a high score on the pin ball machine, must be some material or tangible thing of value, and that securing the amusement of a free game or games on the machine, and nothing more, does not come within that definition and is not within the prohibition of the section."* (Emphasis added.)

There are a number of decisions which hold that the winning of a right to a *free pinball game* does not come within the definition of winning property or something of value, and therefore the operation of such pinball game is not operating a lottery, but there are a number of decisions to the contrary; and *where the free games are exchangeable for money* (as in the case before us), *all the decisions* — and they are quite numerous — *hold such pinball machine is a lottery.* See *People* v. *One Pinball Game,* 316 Ill. App. 161.

As contrasted to the California case of *Gayer* v. *Whelan, supra,* we have the case of *Middlemas* v. *Strutz,* 71 N. D. 186. This North Dakota statute is the same as the California statute, that is, *exactly the same as the Hawaiian statute* except for the omission of the Chinese games appearing in our statute. This case held that a pinball game which is played for a consideration and which offers to the player an opportunity dependent chiefly upon chance to win the right to the extended free use of the device for periods of varying duration *is a lottery,* this even though in the North Dakota case there was no right to receive cash

for the games won! In this *Middlemas* case one of the judges dissented on the ground the player did not receive any "property" or thing of value, which was the real basis of the decision in the California case of *Gayer* v. *Whelan, supra,* not the fact that only one person played at one time.

The statutory definition of lottery, where one is given, may vary in the different States but with scarcely a single exception the courts of the various States have held that slot machines and pinball games are lotteries banned by the criminal laws of the State and it is held immaterial in the few cases where it has been raised that not more than one player can operate the machine at one time. For example, *State* v. *Marck,* 220 P. (2d) 1017 (Mont.), is such a case. This *Marck* case was decided in July, 1950, seven years later than the California case of *Gayer* v. *Whelan* whose dictum is quoted as the basis for the majority opinion herein. In the *Marck* case the definition of lottery is therein given as follows: "Lottery defined. A lottery is any scheme for the disposal or distribution of property by chance, *among persons* who have paid or promised to pay any valuable consideration for the chance of obtaining such property or a portion of it, or for any share or interest in such property, upon any agreement, understanding, or expectation that it is to be distributed or disposed of by lot or chance, whether called a lottery, raffle, or gift enterprise, or by whatever name the same may be known." It will be noted this is the same as the California statute and the Hawaiian statute except for the omission of the Chinese games. The court held that coin-operated slot machines, commonly known as "one-armed bandits," are lotteries within the provisions of the statute, although one of the judges dissented on the same ground as the majority opinion herein, that a slot machine did not come within this definition as only one person can play a slot machine on each play of the machine. The dictum in the California

case of *Gayer* v. *Whelan* and the dissenting opinion in the Montana case of *State* v. *Marck* are the *only decisions* throughout the United States that in any way intimate that a lottery must have more than one participant at a time. It will be noted that the Montana case of *State* v. *Marck,* decided in 1950, had the California decision of *Gayer* v. *Whelan,* decided in 1943, before it, and the dissenting opinion alone considered that only one could play the machine at one time of any importance in passing upon the question of lottery.

Cases from other jurisdictions holding slot machines and pinball games are lotteries are numerous. In addition to the cases referred to *supra,* see *Keeney* v. *State,* 187 S. E. 592; *Thompson* v. *Ledbetter,* 39 S. E. (2d) 720; *City of New Orleans* v. *Collins,* 27 So. 532; *People* v. *McPhee,* 69 L. R. A. 505, 508 (Mich.).

The majority opinion cites the rule that criminal statutes are strictly construed. It states a criminal statute "cannot be made to embrace cases not within the letter, though within the *reason* and *policy* of the law." (Emphasis added.) It, therefore, concludes that the words "among persons" require more than one player to participate against the operator of the device and "persons" may not be construed to be in the singular as well as the plural.

A more correct statement of the law is that "Penal statutes, like all others, are to be fairly construed according to the legislative intent, as expressed in the act." (*United States* v. *Lacher,* 134 U. S. 624.) This case states:

> "But though penal laws are to be construed strictly, yet the intention of the legislature must govern in the construction of penal as well as other statutes, and they are not to be construed so strictly as to defeat the obvious intention of the legislature. *United States* v. *Wiltberger,* 5 Wheat. 76; *United States* v. *Morris,* 14 Pet. 464; *Am. Fur Co.* v. *United States,* 2 Pet. 358, 367."

"To the same effect is the statement of Mr. Sedgwick, in his work on Statutory and Constitutional Law, 2d ed. 282: 'The rule that statutes of this class are to be construed strictly, is far from being a rigid or unbending one; or rather, it has in modern times been so modified and explained away as to mean little more than that penal provisions, like all others, are to be fairly construed according to the legislative intent as expressed in the enactment; the courts refusing, on the one hand, to extend the punishment to cases which are not clearly embraced in them, and, on the other, equally refusing by any mere verbal nicety, forced construction or equitable interpretation, to exonerate parties plainly within their scope.' " (*United States* v. *Lacher,* 134 U.S. 624, 628, 629.)

The reason for the less rigorous application of the rule is set forth on page 629 of the *Lacher* case, *supra,* which quotes from Maxwell on the *Interpretation of Statutes,* 2d ed., page 318, as follows:

"The rule which requires that penal and some other statutes shall be construed strictly was more rigorously applied in former times, when the number of capital offences was one hundred and sixty or more; when it was still punishable with death to cut down a cherry-tree in an orchard [shades of George Washington], or to be seen for a month in the company of gipsies. But it has lost much of its force and importance in recent times, since it has become more and more generally recognized that the paramount duty of the judicial interpreter is to put upon the language of the legislature, honestly and faithfully, its plain and rational meaning, and to promote its object."

There are numerous cases dealing with the subject of strict construction. For example, *Ash Sheep Co.* v. *United States,* 252 U. S. 159, states at page 170:

"It is argued that the rule that penal statutes must be strictly construed forbids such latitude of construction. But this is sufficiently and satisfactorily answered by repeated decision of this court.

" 'The admitted rule that penal statutes are to be strictly construed is not violated by allowing their words to have full meaning, or even the more extended of two meanings, where such construction best harmonizes with the context, and most fully promotes the policy and objects of the legislature.' *United States* v. *Hartwell,* 6 Wall. 385; *United States* v. *Freeman,* 3 How. 556, 565; *United States* v. *Lacher,* 134 U. S. 624, 628."

In the *Ash Sheep Co.* case, *supra,* the statute imposed a penalty for grazing and feeding on the lands of an Indian tribe without permission "any stock of horses, mules, or cattle." The defendant grazed sheep on the lands and contended that under the rule of strict construction, "cattle" included only those of the bovine species and the word "sheep" was not included in "horses, mules, or cattle," but the court held the *purpose* of the law was to prevent unauthorized grazing on the land and it was not compelled to give the narrow meaning to "cattle" but the word could include sheep.

Strict construction of penal statutes does not require the narrow technical meaning to be given to words in disregard of their context so as to frustrate the obvious legislative intent (*United States* v. *Corbett,* 215 U. S. 233) but such statutes may be given their fair meaning in accord with the evident legislative intent. (*United States* v. *Raynor,* 302 U. S. 540, 541.)

That lottery statutes are remedial and in construing the law the courts have taken in mind the evil to be remedied see *State* v. *Barbee,* 175 So. 50, 53 (La.). In holding a pinball game to be a lottery this case quoted Bishop

on *Statutory Crimes,* section 952, that "Lottery is any scheme whereby one, on paying money or other valuable thing to another, becomes entitled to receive from him such a return in value or nothing, *as some formula of chance may determine."* This *Barbee* decision continues: " 'In applying the law the courts have taken this as the evil to be remedied, and uncertain or doubtful terms have been construed with this object in view. * * * These schemes are so various that it is difficult to cover them, even by a general description * * *.' "

An important point overlooked by the majority is that "the rule of strict construction does not negative the use of other rules of construction in order to ascertain the legislative purpose. The ascertainment of the legislative intent is, even where penal statute are concerned, the sole legitimate purpose of judicial construction, and the rule of strict construction is to be utilized, along with the various other rules of construction, simply as a means for discerning and making the legislative intent effective." (Crawford, *Statutory Construction, Interpretation of Laws, Strict and Liberal Construction,* § 240, p. 464.)

It has already been pointed out that under the guise of strict construction the majority opinion ignores the rule of construction as set forth in section 14 of the Revised Laws of Hawaii that the plural includes the singular and vice versa. It also ignores other settled rules of construction as set forth in sections 12 and 13 of the Revised Laws as follows:

"*Sec. 12. Reason and spirit.* One of the most effectual ways of discovering the true meaning of the law, when its expressions are dubious, is by considering the reason and spirit of it, or the cause which induced the legislature to enact it."

"*Sec. 13. Absurdity.* When the words of a law are ambiguous, every construction which leads to an ab-

surdity should be rejected."

The essential elements of lottery under all the authorities are consideration, prize and chance. The purpose of our statute is to make illegal *"any scheme" for lottery by whatever name it may be called.*

Is it not unreasonable and does it not result in an absurdity to construe this sweeping prohibition against "any scheme" of lottery, to exempt from its terms slot machines and their offspring, pinball machines, which contain all the elements of a lottery as set forth (namely, consideration, prize and chance) and which have by decisions in practically every State been held to be lotteries, simply because a legislature used the plural term which no doubt was used for the sake of brevity and as "the more comprehensive term, cognizant of the rule that the plural also includes the singular"? (*Waterhouse Tr. Co.* v. *Rawlins, supra.*)

Nowhere, so far as I can find, are there any decisions (except the dictum in the California case of *Gayer* v. *Whelan, supra*) which hold it is necessary to have more than one player at a time pit his luck against the operator of the scheme or device to constitute a lottery; nor is there any reason given why where one pays a consideration for a chance to win more money or a prize should not come within the terms of the Act the same as if many were participating in the chance for a prize or prizes.

Our lottery statute is a sweeping one intended to cover any and all forms of gambling based upon consideration, chance and prize.

Without reviewing all the decisions which hold slot machines, pinball games, etc., constitute lotteries (although only one person can play against the operator at one time), it is stated in 54 C. J. S., *Lotteries,* section 8, page 583, as follows:

"* * * by the weight of authority the operating of

slot machines, wheels of fortune, or similar devices whereby small amounts are hazarded on the chance of winning a larger sum of value, constitutes a lottery, regardless of the name by which they are called or the method of operating them * * *."

This section cites, among others, the following three notes:

"*Transaction in nature of lottery.* The maintenance and operation of a slot machine, where person playing may, by chance, obtain money or articles of value worth more than money deposited in machine, is a lottery or transaction in nature of a lottery. — Thompson v. Ledbetter, 39 S. E. 2d 720, 74 Ga. App. 427."

"*Absence of automatic pay-off.* The fact that machine did not have automatic pay-off like slot machine did not prevent it from being lottery, where operator's agent paid players out of cash register. — State v. Barbee, 175 So. 50, 187 La. 529."

"*A pinball machine and a nickel-in-the-slot machine* come within the same category and must be judged by the same law in determining whether they constitute prohibited lotteries. — State v. Coats, 74 P. 2d 1120, 158 Or. 102."

*State* v. *Coats, supra,* which held a pinball machine was a lottery and not a game of skill, has an elaborate citation of authorities.

It is needless to review the numerous authorities holding slot machines and their offspring, pinball machines, are lotteries, all offering a chance upon payment of a consideration for a larger sum or prize.

A few interesting cases are:

*Pepple* v. *Headrick,* 64 Idaho 132, at 141, although not involving a lottery statute, points out that pinball games are of comparatively recent introduction to the public "and are the progeny of the well-known, omnipresent slot ma-

chine — simply a specie of that numerous family." It refuses to make a specific definition of a gambling "device" within the meaning of the statute, quoting the Supreme Court of Delaware upon lotteries thusly:

" 'It is best, perhaps, not to define the word "lottery" too precisely, for the reason that human ingenuity is too frequently successful in evolving a scheme entirely within the mischief, but not quite within the letter of the definition. *People* v. *McPhee,* 139 Mich. 687, 103 N. W. 174, 69 L. R. A. 505, 5 Ann. Cas. 835.' "

*People* v. *Gravenhorst,* 32 N. Y. S. (2d) 760, contains a full discussion of the history of pinball machines and the extent to which they operated in New York. At that date (1941), according to certain investigators, such machines had a gross annual income of over twenty million dollars in the City. No study was made of slot machines where the take was probably much larger. The court also points out that the records of the police department of New York City disclose over four thousand five hundred arrests in 1939, and that one out of every three persons who owned or leased a pinball machine in the City had been arrested at least once. Also, the *Gravenhorst* case points out that "The evil which the law chiefly condemns is betting and gambling organized and carried on as *a systematic business. * * * Curb* the professional with his constant offer of temptation, coupled with ready opportunity, and you have to a large extent controlled the evil. [Citing cases.]" (Emphasis added.)

To come to our local decision: *Territory* v. *Beeson,* 23 Haw. 445, held that a slot machine was a lottery within the provisions of the statute, sections 11340 and 11341. This machine operated gave three sticks of gum for every nickel deposited and in addition thereto at uncertain and irregular intervals gave trade checks redeemable in merchandise. Necessarily, the machine was operated by one

player at a time. The majority opinion, however, refuses to consider *Territory* v. *Beeson* of any force and effect because "the precise question raised in the instant case was not presented to the court" although the majority opinion admits "it seems that there should be no difference between the two [pinball game and slot machine] as to the applicability of the definition of lottery." This, at most is a negative argument. The court did decide that a slot machine, which obviously had to be played by one player at a time, was a lottery, and the law as thus interpreted has been enforced throughout the Territory these many years.

It is argued that there is a difference between pinball games and slot machines. That is true under a Federal taxing statute which holds that under a law imposing a tax upon "so-called slot machines" a pinball game is not included as slot machines are operated by coins. The decisions of the Federal court on this point cited in the majority opinion certainly cannot have the slightest bearing on whether a pinball machine is a lottery. It is further suggested that a pinball machine differs from a slot machine in that the coins of a slot machine are shared among a number even though only one may play it at a time, that this one stands to reap coins deposited by others. However, as shown even by our own decision, slot machines do not necessarily pay off in coins but may pay in tokens (*Territory* v. *Beeson, supra*) or the operator's agent may pay players out of the cash register. (*State* v. *Barbee, supra.*)

In conclusion, it appears that the opinion of the majority by "mere verbal nicety and forced construction" is exonerating parties clearly within the purpose and scope of our statute. In its so-called rule of strict construction of penal statutes it is violating the rules of construction of statutes as set forth in sections 12, 13 and 14 of the Revised Laws of Hawaii 1945. It refuses to take the more extended

rule where words have two meanings (the plural and/or singular) even though it "best harmonizes with the context, and most fully promotes the policy and objects of the legislature." It disregards the overwhelming weight of authority holding that pinball games and slot machines are lotteries. In this weight of authority there are decisions in at least three States which have *statutes exactly the same as the statute of Hawaii* (except for the omission of the Chinese games enumerated in the Hawaiian statute). It has upset the forty-year holding in Hawaii that slot machines (and necessarily pinball games where they include consideration, chance and reward) are lotteries; all this, even though the statute is aimed at the professional gamblers (operators of slot machines), not raffles of cakes and pies at women's church suppers, as "The root of the evil lies in the exploitation by professionals of the gambling instinct innate in human nature." (*People* v. *Gravenhorst, supra.*)

In my opinion the order of the district magistrate sustaining defendant's demurrer should be reversed.